## Metropolitan National Bank v. Merchants National Bank.

1. BANKS AND BANKING—*Recovery of Money Paid on a Raised Draft.*—When money is paid upon a raised draft, without any negligence upon the part of the person paying the same, it can be recovered from the party to whom it was paid.

2. INSTRUCTION—*To Find for Defendant, When Waived.*—An instruction to take a case from the jury, when presented with the other instructions, is waived.

3. DEPOSITIONS—*Purpose of the Statute Requiring Exhibits to be Attached.*—The requirement of the statute that all exhibits produced to the officer taking the deposition, or which shall be proved or referred to by a witness, shall be indorsed and sealed up with the deposition, commission, and interrogatories, and directed to the clerk of the court in which the action shall be pending, etc., is for the protection of the parties interested, and to prevent any fraud or mistake by the substitution of papers not produced before the commissioner or referred to by the witness in his testimony.

4. SAME—*At aching Copies of Exhibits.*—Where the deposition of two witnesses was taken concerning an original draft, and one of them afterward testified at the trial concerning such draft, which was then produced and offered in evidence, the court will not suppress the deposition of the other witness because, instead of the original draft, a copy of it was attached to his deposition.

**Assumpsit,** to recover back money paid on a raised draft. Trial in the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the October term, 1897. Affirmed. Opinion filed June 29, 1898.

MORAN, KRAUS & MAYER, attorneys for appellant.

"Where a bank acts as agent in collecting paper that turns out to be raised, and it has paid over the money to its principal, suit lies against the principal, and not against the agent bank, by the party who has mispaid." Morse on Banks and Banking, Vol. 2, Sec. 479, 2d Ed.; Mechem on Agency, Sec. 561; 1 Am. & Eng. Ency. of Law, 405; Smith v. Binder, 75 Ill. 492.

OTIS & GRAVES, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

February 7, 1894, the Flour City National Bank of Minneapolis, by its cashier, A. A. Crane, for the sum of $35.10, to it then paid, drew and delivered its draft for $35 to Frank H. Harper, payable to his order and directed to appellee. The draft was also perforated " $35$."

February 13, 1894, this draft, changed in amount to $3,500, and perforated " $3,500$," was presented to appellee for certification and acceptance, and the change not being apparent to the paying teller of appellee, he accepted it and the amount of $3,500 was charged, on the books of appellee, to the Flour City National Bank. It does not appear by whom this change of the draft was made, but it was changed before its acceptance by appellee, and without the knowledge or consent of the Flour City National Bank. February 13 or 14, 1894, the draft as accepted and certified was deposited by Harper with the American Trust & Savings Bank of Chicago, and credited to his account. February 14, 1894, the draft was delivered by the American Trust & Savings Bank to appellant, and on that day appellee paid $3,500 through the Chicago Clearing House to appellant for the draft. This amount was subsequently paid by appellant to the American Trust & Savings Bank, which still has the money. February 17, 1894, a question having arisen as to the correct amount of the draft, appellee's officers telegraphed to the Flour City National Bank, and having received an answer, went to appellant and made a demand that appellant redeem the draft, leaving the draft with appellant. On the same day appellant, by its second assistant cashier, returned the draft to appellee, with a letter stating that "American Trust & Savings Bank declines to redeem same. I will report matter to Mr. Keith early Monday morning. Kindly return receipt given you." February 19, 1894, which was the Monday referred to, a representative of appellee had an interview with Mr. Keith, appellant's president, who informed the representative that appellant could not redeem the draft because the American Trust & Savings Bank, under the advice of counsel, refused to re-

deem it.   At the time of these interviews appellee's president knew that appellant cleared for the American Trust & Savings Bank, and testified that the indorsement on the draft so indicated.

From February 14 to February 20, 1894, both days inclusive, it is uncontroverted that the American Trust & Savings Bank at no time had on deposit with appellant less than $198,000, and on February 19, 1894, when appellant finally refused to redeem the draft, it had to the credit of the American Trust & Savings Bank $288,018.77.

At the time of the transactions in question, appellee was the Chicago correspondent of the Flour City National Bank of Minneapolis, and the American Trust & Savings Bank, not being a member of the Chicago Clearing House, checks and drafts drawn upon or deposited with it were cleared through appellant, the same being received by appellant as deposits and credited to the American Trust & Savings Bank, against which account the latter drew.

After this draft was received by the American Trust & Savings Bank, indorsed by Harper, it was stamped with the following indorsement, viz: " American Trust & Savings Bank.   Paid ——— Feby. 14, 1894.   Paid through Chicago Clearing House to Metropolitan National Bank." There is evidence, by way of opinions of banking experts, tending to show that this indorsement has a significance peculiar to bankers in Chicago ; that Chicago bankers generally understood it different from the common and ordinary meaning of the words, and to them it signified in this case that appellant was agent in the Clearing House of the American Trust & Savings Bank to collect the draft. There is also evidence of the same character tending to show that the indorsement has no such peculiar significance to Chicago bankers, and that its significance to them is not different to what it is to laymen or others.

When the draft was certified by appellee, the amount of $3,500 was charged to the Flour City Bank, and was afterward credited back, but whether before or after this suit does not appear.   The Flour City Bank disputed the right

of appellee to charge it over $35, because of the change in the draft.

Appellee, on March 29, 1894, sued appellant in assumpsit to recover the difference between the draft as originally drawn and the amount of $3,500, paid by it to appellant, declaring on the common counts. Appellant pleaded the general issue, and a trial before the court and a jury resulted in a verdict for appellee of $4,003.52, and a judgment thereon, from which this appeal is taken.

It is claimed that the trial court erred in denying a motion of appellant, made some weeks prior to the trial and renewed when the case was called for trial, to suppress the depositions of Harry W. White and A. A. Crane, for the reason that in the depositions both these witnesses testified concerning the original draft, which was then produced and offered in evidence, but over the objection of appellant's attorneys a copy, instead of the original draft, was attached to the depositions. The deposition of White was not offered or read in evidence. On the trial he was called as a witness for appellee, identified the original draft, and testified that the body of the draft was in his handwriting, that he signed it, and as to the changes made in it after he had signed it. After this testimony, the draft was offered in evidence, and thereafter the deposition of Crane was offered and read. We are unable to see how appellant could in any way have been prejudiced by this action of the court. The requirement of the statute—that all exhibits produced to the officer taking the deposition, or which shall be proved or referred to by any witness, shall be indorsed and sealed up with the deposition, commission, and interrogatories, and directed to the clerk of the court in which the action shall be pending, etc.— is evidently for the protection of the parties interested and to prevent any fraud or mistake by the substitution of papers not produced before the commissioner or referred to by the witness in his testimony. We think that when the paper referred to by one witness, whose deposition was taken but not read in evidence, was proven on the trial and thereby made competent evidence in the case, there was no

error in overruling the motion to suppress the depositions, nor in admitting in evidence the deposition of the other witness who referred in his deposition to the same paper.

It is also claimed that the court erred in refusing to allow appellant to show that in collecting the draft in question, appellant acted as the agent of the American Trust & Savings Bank, and that this fact was known to appellee.

We are inclined to think, from an examination of the evidence, that this fact was shown, and that appellee knew it on the day it demanded of appellant that it redeem the draft, but not before. The only evidence in this regard which it is claimed the court excluded, was an offer by appellant's attorney to show that appellee made a demand on the American Trust & Savings Bank February 17, 1894, for the payment of the draft in question. We think there was no reversible error in this ruling. The proffer was not to show that appellee had this knowledge prior to February 17th. It might be admitted that on this date appellee knew that appellant was the agent of the American Trust & Savings Bank in the collection of the draft, and it would be immaterial in determining appellant's liability for the proceeds of the draft. Whether appellant was agent or principal can make no difference, because, when demand was made on it by appellee for the payment of the draft, it had ample funds of the American Trust & Savings Bank with which to make the payment. The fact that appellant, when it collected the proceeds of the draft, at once credited the same to the American Trust & Savings Bank, is not important. It did not pay merely by making entries on its books. The account was a running account, and the balance on the books of appellant to the credit of the American Trust & Savings Bank was $198,108.88 on February 17th, when demand was first made, and on February 19th, when appellant finally refused to redeem the draft, the balance was $288,018.77. There is no claim that there was any specific payment of this collection by appellant to the American Trust & Savings Bank, and even if there was, the excluded evidence had no tendency to prove such payment.

Moreover, the account of the American Trust & Savings Bank with appellant was not different from that of an ordinary depositor. The credits and payments were made generally, and in the case of this draft the indorsements were in no way restrictive, contained no notice that appellant acted as agent, the opinions of experts to the contrary notwithstanding, and passed the title from the American Trust & Savings Bank to appellant. The money when paid by appellee became the money of appellant, and it was responsible to appellee whether it paid the proceeds of the draft to the American Trust & Savings Bank or not. As to appellee, the appellant was a principal, and if not a principal it had ample funds of the principal in its hands with which to pay the draft. 2 Morse on Banking, Sec. 574; Rhodes v. Jenkins, 18 Colo. 49; Ogden v. Benas, 9 Law Rep., C. P. 513; Nat. Park Bank v. Eldred Bank, 90 Hun, 286.

In the latter case the facts were quite similar to the one at bar. The court said: "The draft in question was indorsed absolutely to the Eldred Bank, and it directed its collection for its account, thereby assuming the place of principal as far as the plaintiff was concerned. If it was acting as collecting agent only, as it now claims, such agency was not disclosed to the plaintiff at the time of the transaction, and it had the right to rely upon the responsibility of the defendant as owner of the draft in paying the same. Such being the relation of the parties, the distinction between the case at bar and that of the present plaintiff against the Seaboard Bank seems to be apparent. In the case of the Seaboard Bank, as has already been observed, the agency was disclosed. In the case of the defendant it was not. In the presentation of the draft for collection, the defendant represented itself to be the owner of the draft, and the payment was made by the plaintiff under those circumstances. It does not seem to need the citation of authorities to show that when money is paid upon a raised draft, without any negligence upon the part of the person paying the same, it can be recovered from the party to whom it was paid."

The case of the Seaboard Bank above referred to is reported in 114 N. Y. 28, and relied on by appellant. In that case the indorsement to the Seaboard Bank was "for collection," whereas the indorsement here, as has been seen, was absolute. We think the fact that the further indorsement, "Paid through Chicago Clearing House to Metropolitan National Bank," may have indicated to bankers in Chicago that the latter bank cleared for the American Trust & Savings Bank, but that fact does not indicate that appellant was agent and did not own the draft. The indorsement was to be construed by the court, and the evidence of bankers as to its meaning should not be taken to change its legal import, which would be to pass the title of the draft to appellant absolutely.

The further claim is made that the court erred in not directing a verdict for appellant. A motion to that effect was made at the close of all the evidence, and counsel for appellant stated that he had "a written instruction here, the same as we presented to the court this morning." The motion was overruled, but the instruction does not appear in the abstract or the record. An instruction, in substance directing a verdict for defendant, was asked, with other instructions, for plaintiff and defendant, upon the merits of the questions submitted to the jury. The instruction to take the case from the jury, being presented with the other instructions, was waived. Ry. Co. v. Fishman, 169 Ill. 197; Wright v. Avery, 172 Ill. 313.

The first instruction given for appellee is claimed to be erroneous, in that it fails to contain two facts essential to a recovery by appellee, viz.: first, the necessity of offering to return the draft and of proving that appellee had a claim at the time of the commencement of this suit; and second, that in the collection of the draft appellant acted as agent of the American Trust & Savings Bank, and paid over the money before receiving any notice that the draft had been altered, or any demand for the repayment of the money. The instruction is, viz.:

" 1. The jury are instructed that if they find, from the

evidence, that the Flour City National Bank of Minneapolis, on or about the 7th day of February, 1894, issued its draft upon the plaintiff for the sum of $35, payable to the order of Frank H. Harper, and delivered it to him for that sum; that afterward the said draft was fraudulently altered and raised by Frank H. Harper, or some person unknown, so that it purported to be drawn for the sum of $3,500 instead of for the sum of $35 only, without the knowledge or consent of the said Flour City National Bank, the drawer thereof, and that afterward the said draft so fraudulently raised and altered as aforesaid was presented to the plaintiff for certification and acceptance; and that thereupon the said plaintiff, by its duly authorized agent in that behalf, without knowledge that said draft had been changed or altered, indorsed upon said draft the following words: 'Accepted. Payable through Chicago Clearing House February 13, 1894, when properly indorsed. Merchants National Bank, by Philip P. Lee, teller;' and that the said draft was, by the said Frank H. Harper, deposited for credit in the American Trust & Savings Bank of Chicago, and that the same was by said American Trust & Savings Bank indorsed and delivered to the defendant, and that afterward said plaintiff paid to the said defendant, in the usual course of business, the full sum of $3,500, being the amount of said draft after the same had been so fraudulently changed and raised as aforesaid, instead of the sum of $35, being the sum for which said draft was actually drawn, without knowledge of the fact that it had been so raised and changed; and that subsequently and within a reasonable time after the discovery of the fact by the plaintiff that said draft had been fraudulently changed and altered as aforesaid from $35 to $3,500 (if the jury find, from the evidence, that it had been so fraudulently changed and altered), demand was made by the plaintiff on said defendant for payment of the said amount so received and collected on said draft in excess of $35, the sum for which it was originally drawn, and that payment thereof by said defendant was refused, then the jury are instructed that

the plaintiff has a right to recover of the defendant in this action the sum of $3,465.

"The jury are further instructed that in case they find from the evidence the plaintiff is so entitled to recover of the said defendant the said sum of $3,465, and if they further find from the evidence that there has been unreasonable and vexatious delay in the payment of the same, by the said defendant to the said plaintiff, they may allow interest thereon at the rate of five per cent per annum."

When appellant was requested to redeem the draft by appellee, the draft was turned over to appellant, and by it retained until it had made investigation, whereupon having refused to redeem the draft, appellant returned it to appellee, and can not be heard now, in face of these facts, to claim that appellee should again offer to return the draft. And, moreover, no tender of the draft was necessary after a formal demand was made for its payment and a refusal to pay by appellant.    Brewster v. Burnett, 125 Mass. 68.

Whether appellee charged or credited the Flour City National Bank with the amount of the draft, was immaterial.    The facts, as shown by the record outside the bookkeeping of appellee, fix the rights of appellee and the Flour City Bank.    When appellee accepted the draft under the circumstances shown, it became liable to pay it, and when the draft was paid and the forgery afterward discovered, appellee could rightfully charge the Flour City Bank only the amount for which the draft was originally drawn, and it could make no difference as between the Flour City National Bank and appellee whether appellee credited on its books the proper amount before or after this suit was commenced.    Brewster case, *supra*.

What has been said with regard to the agency of appellant and notice to appellee of such agency, disposes of the remaining contention as to this instruction.    Under the evidence so far as concerns the alleged agency, the court might well have instructed a verdict for appellee instead of submitting the matter to the jury.    We see no error in the instruction.    The same contention is made by appellant as

to instructions two and three given for appellee. It is unnecessary to set them out. We think there was no error in giving them. The court also refused twenty-four other instructions asked by appellant, and gave for appellee instructions numbered four, six and seven, of which complaint is made, but in what respect there was error in refusing or giving any of these numerous instructions, counsel have not attempted by their brief to point out, and we do not feel called upon to consider them further than to say we have examined the instructions given for appellee and appellant, and being of opinion that the jury was fully instructed on the questions at issue, and that the record presents no reversible error, the judgment will be affirmed.