## Continental National Bank of Chicago v. Metropolitan National Bank of Chicago.

1. BANKS AND BANKING—*Recovery of Money Paid upon a Raised or Altered Check.*—Where money is paid by mistake, by a bank upon a raised or altered check, it may be recovered back by the party to whom it was paid as having been paid without consideration.

2. SAME—*What Liability is Created by Certification of Check.*— A bank in certifying a check vouches only that the signature is genuine and that there are funds enough to pay the amount for which the check purports to be drawn.   The bank certifying does not warrant the genuineness of the body of the check.

3. SAME—*Purpose of Certification.*—When a check is presented for certification to a bank upon which it is drawn, the purpose is to ascertain whether the drawer of the check has funds sufficient to meet it, and further to obtain the engagement of the bank that those funds shall not be withdrawn from the bank by the drawer of the check.

4. SAME—*Unreasonable Delay in Discovering Forgery of Check and Giving Notice Bars Payor's Recovery.*—Where there has been an unreasonable delay in discovering the forgery of a check which has been paid, and giving notice, it will bar a recovery by the payor.

5. SAME—*What is Reasonable Diligence in Giving Notice.*—What is reasonable diligence in giving notice is usually a question of fact, under the circumstances of each particular case.

6. SAME—*Where Bank Paying Money on a Raised Check Elects to Proceed Against the Payee.*—Where a bank which has paid out money by mistake upon a raised check elects not to inform the bank of the forgery so that it may protect itself, but elects to proceed against the payee of the check, it is such conduct as will tend to preclude a recovery from the bank to which the money was originally paid.

7. SAME—*Payor of Raised Draft Must Tender Draft Before Bringing*

*Suit.*—Before a payor of a raised draft can bring suit for the recovery of the money a return or proper tender of the draft is essential, or some act shown on the part of the defendant making such return or tender useless.

8. VERDICT—*When It May be Directed for the Defendant.*—When the evidence given at the trial, with all the inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury but may direct a verdict for the defendant.

**Assumpsit,** for money paid by mistake. Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902.    Affirmed. Opinion filed April 14, 1903.

**Statement.**— On February 7, 1894, the First National Bank of St. Paul drew and delivered its draft for $33 to Frank H. Harper, payable to his order and directed to appellant, the Continental Bank of Chicago.  By February 9, 1894, this draft having been by some one changed to $3,300, was presented to appellant for certification and acceptance, and the change not being noticed by the paying teller of appellant, he accepted it, and $3,300 were charged upon the books of the appellant to the First National Bank of St. Paul.   On or about  February 9th, and after said draft had been certified, it was deposited by Harper with the American Trust and Savings Bank of Chicago, and credited to his account in good faith, so far as the American Trust and Savings Bank was concerned.   At that time Harper had a current credit account with said bank and drew against his credit therein, which credit included said raised draft.

On or about February 10, 1894, the American Trust and Savings Bank, after having placed said raised draft to the credit of Harper, deposited the same with appellee, the Metropolitan National Bank, and appellee, on February 10, 1894, gave credit to the American Trust and Savings Bank to the amount of $3,300, on account of said draft, and on the same day sent said draft through the clearing house, where it was, on or about February 10th, paid by appellant

to appellee.    The American Trust and Savings Bank cleared through the bank of appellee.

November 29, 1898, appellant made a demand upon the appellee for the repayment of said draft with which demand appellee did not comply.

This suit was begun November 30, 1898, to recover the difference between the amount at which the draft was originally drawn and the amount to which it was raised, as for money paid through mistake by appellant to appellee.

February 16, 1894, appellant commenced a suit in attachment against said Harper for the recovery from him of the amount of over-payment on said draft.    In the affidavit for attachment it is stated that Harper is indebted to the Continental National Bank " in the sum of $3,300, upon a certain draft; and affiant further states that said Harper is not a resident of this state."  The affidavit attached to the declaration filed in said attachment suit, sworn to by the president of appellant, recites " that the demand of the plaintiff in the above entitled cause is for money due and owing the plaintiff from the defendant on a certain draft or bill of exchange falsely altered, forged and counterfeited upon which the plaintiff paid, $3,300, to the American Trust and Savings Bank at defendant's request, and that there is due from defendant $3,260."

The writ of attachment issued in said cause was served on the American Trust and Savings Bank as garnishee on February 16, 1894.    The American Trust and Savings Bank answered that on February 16, 1894, $200 were on deposit with it to the credit of said Harper.    An order of default was entered in said cause against said Harper, February 25, 1896.

After the introduction of all the evidence in the case and pursuant to the peremptory instruction of the court, the jury found the issues for the defendant and judgment was entered thereon.

CUSTER, GODDARD & GRIFFIN, attorneys for appellant.

MORAN, MAYER & MEYER, attorneys for appellee.

The judgment must be affirmed because appellant failed to return, or offer to return the draft to appellee. 2 Daniel on Neg. Inst. (4th Ed.), Sec. 1372a; Tiedeman on Com. Paper, Sec. 400; Redington v. Woods, 45 Cal. 406, 423, 429; Van Wert Natl. Bank v. First Natl. Bank, 6 Ohio Cir. Ct. Rep. 130; Simms v. Clarke, 11 Ill. 137; Union National Bank v. Baldenwick, 45 Ill. 375; Magee v. Carmack, 13 Ill. 289; United States v. National Exch. Bank, 45 Fed. Rep. 163; United States v. Clinton Nat. Bank, 28 Fed. Rep. 357; Roth v. Crissy, 30 Pa. St. 145; Rick v. Kelly, Id. 527; Cooke v. United States, 91 U. S. 389; Raymond v. Baar, 13 Serg. & R. (Pa.) 317; Bank of U. S. v. Bank of Georgia, 10 Wheat. 333; Gloucester Bank v. Salem Bank, 17 Mass. 32; Thomas v. Todd, 6 Hill (N. Y.), 340; Brewster v. Burnett, 125 Mass. 68; Coolidge v. Brigham, 1 Metc. 547; Bassett v. Brown, 105 Mass. 551.

The judgment must be affirmed because appellant did not notify appellee of the forgery within a reasonable time after discovering it. Authorities, *supra;* 3 Randolph on Com. Paper (2d Ed., 1899), Sec. 1740; Schroeder v. Harvey, 75 Ill. 638; First Natl. Bank v. Ricker, 71 Ill. 439; United States v. Central Natl. Bank, 6 Fed. Rep. 134; Bank of St. Albans v. Farmers' & Mech. Bk., 10 Vt. 141; First Nat. Bk. v. Tappan, 6 Kans. 457; Leather Mfrs. Bk. v. Morgan, 117 U. S. 96, 114, 115; Metropolitan Natl. Bank v. Merchants' Natl. Bk., 182 Ill. 367.

Appellant's conduct in withholding notice of the forgery from appellee for nearly five years constituted such an unreasonable delay as justified the court in so holding, as a matter of law. Browne v. Siegel, Cooper & Co., 191 Ill. 226, 235; Heimann v. Kinnare, 190 Ill. 156, 160; Offutt v. Columbian Exposition, 175 Ill. 472, 474; Cooke v. United States, 91 U. S. 389, 402.

Mr. Justice Burke delivered the opinion of the court.

The Continental National Bank seeks to recover money paid by it on a fraudulently raised check to the Metropolitan National Bank. The doctrine is well established that where money is paid through mistake by a bank upon a raised

or altered check, it may be recovered back by the party to whom it was paid as having been paid without consideration. 2 Daniel on Negotiable Instruments, Sec. 1661. The draft in question was certified by appellant and then raised. But its certification of the check does not preclude the bank from showing an alteration made before attaching its certificate.

A bank in certifying a check vouches only that the signature is genuine and that there are funds enough to pay the amount for which the check purports to be drawn. The bank certifying, does not warrant the genuineness of the body of the check. In Marine National Bank v. National City Bank, 59 N. Y. 67, it was held :

" When a check is presented for certification to a bank upon which it is drawn, the purpose is to ascertain with certainty what the bank alone can know, and that is whether the drawer of the check has funds sufficient to meet it, and further to obtain the engagement of the bank that those funds shall not be withdrawn from the bank by the drawer of the check."

It is insisted by counsel for appellant that with the exception of the matters relating to the attachment suit, the facts are the same in effect as those involved in Metropolitan National Bank v. Merchants' National Bank, decided by this court and reported in 77 Ill. App. 316, and affirmed in 182 Ill. 367. It must be noted that in the Merchants' National Bank case, the raised check was certified February 13, 1894, and on the next day the check was paid by the Merchants' National Bank to appellant, and three days thereafter, a question having arisen as to the correct amount of the draft, the Merchants' National Bank went to the Metropolitan National Bank and made a demand upon it to redeem the draft, leaving the draft with the bank. But in the case at bar, the raised draft in question was certified February 9, 1894, and on that day paid to the Metropolitan National Bank. Four days thereafter, appellant learned that said draft was fraudulently raised from $33 to $3,300, but for the long period of nearly five years, and not until November 29, 1898, did appellant inform

appellee of its discovery of fraud or make a demand upon appellee to return the money paid by it to the Metropolitan National Bank. In the Merchants' National Bank case it was made to appear that the money collected upon the draft was still to the credit of the American Trust and Savings Bank. In the case at bar, it appears that many years prior to the making of the demand, the money collected thereon had been withdrawn by the American Trust and Savings Bank and in the one case the draft was returned by the Merchants' National Bank to the Metropolitan National Bank, while in this case the draft has never been returned or offered to the Metropolitan National Bank. We are therefore of the opinion that the case heretofore decided is not controlling in the case at bar.

We have before us the two questions: (1) Should appellant have notified appellee that the draft had been raised at once upon hearing of the fraud, instead of waiting nearly five years before notifying appellee? (2) Should appellant have returned or offered to return to appellee the raised check?

In First National Bank v. Ricker, 71 Ill. 439, it is said:

"In very many of the cases where it has been held the drawee can not recover back money inadvertently paid on a forged bill or check, that one element of defense was in not giving prompt notice to the payee or holder, the instrument was a forgery. The tendency of all modern decisions seems to be that, where there has been an unreasonable delay in discovering the forgery and giving notice, it will in every instance bar a recovery by the payor."

In that case notice that the check was a forgery was given within a few hours after payment was made. In Schroeder v. Harvey, 75 Ill. 638, the court say:

"In Simms v. Clarke, 11 Ill. 137, it was held by this court that in case of a counterfeit bill, the party receiving it must return it within a reasonable time after it is discovered to be spurious or he loses his recourse upon the person from whom he received it, and that what shall be considered a reasonable time must necessarily depend upon the situation of the parties and the facts and circumstances of the particular case."

The same principle is declared in Magee v. Carmack, 13 Ill. 289; Union National Bank v. Baldenwick, 45 Ill. 376. The rule laid down in this state is, that reasonable diligence is required in giving notice of forgery after its discovery.

What is reasonable diligence in giving notice is usually a question of fact under the circumstances of each particular case.   The books abound in cases where, under the particular facts, periods of omission to give notice from one week to six months were considered such negligence as to preclude recovery of money paid out on forged paper or raised drafts.   The Bank of St. Albans v. F. & M. Bank, 10 Vt. 141; 3 Randolph on Com. Paper, Sec. 1740, and authorities cited in a note.

In the case at bar, appellant and appellee at the time of the transactions in question, were both well known banking houses in the city of Chicago.   While ordinarily money paid on a raised draft by mistake may be recovered back, still if either party has been guilty of negligence or carelessness by which the other has been injured, the negligent party must bear the loss.   This doctrine is clear and is sustained by authority.

Was the delay of appellant in notifying appellee of forgery unreasonable and did it result in injury or loss to appellee ?   In Leather Mfrs. Bank v. Morgan, 117 U. S. 96, Mr. Justice Harlan, speaking for the court, said :

"If the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank is thereby prejudiced because it was prevented from taking steps by the arrest of the criminal, or by an attachment of his property or other form of proceeding to compel restitution.   It is not necessary that it should be made to appear by evidence that benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal.   Whether the depositor is to be held as having ratified what his clerk did or to have adopted the checks paid by the bank and charged to him, can not be made in this action to depend upon a calculation whether the criminal had at the time the forgeries were committed, or subsequently, property sufficient to meet the demands of

the bank. As the right to seek and compel restoration and payment from the person committing the forgeries, was in itself a valuable one, it is sufficient if it appears that the bank by reason of the negligence of the depositors, was prevented from promptly, and, it may be effectively, exercising it."

The record does not show that the long delay of nearly five years in giving notice of the raising or altering of the draft has not resulted in loss to appellee. It is to be presumed under the facts of this case, that there has been a change of circumstances in the position of the parties otherwise liable, and therefore that through the negligence of appellant in not promptly notifying appellee of the alteration of the draft, the appellee has been prejudiced; and if prejudiced, it follows that the delay in giving said notice was unreasonable and under the authorities such delay as would preclude recovery. It is true questions of fact, under proper instructions of law, are usually for the jury, but when the evidence given at the trial with all the inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.

In the case at bar, the facts are not disputed. The proximity of appellant and appellee, the existence of the forgery known to appellant nearly five years before its sending notice thereof to appellee, and appellant's failure through all this lapse of time to make demand upon appellee for repayment, are all undisputed facts, and their legal significance is to be determined by the court and not by the jury.

The conduct of appellant, as shown by this record, may justly lead to the conclusion that it had adopted the draft in the condition it was when paid, and had determined not to look to appellee for its repayment. This conclusion is sustained by the record, whereby it appears, that almost immediately upon the discovery of the forgery, appellant commenced an attachment suit against Harper. In the

Continental Nat. Bank v. Metropolitan Nat. Bank.

affidavit for an attachment, appellant states that said Harper
was indebted to it in the sum of $3,300, upon a certain
draft, and in said proceedings a part of said $3,300 was
reached by service upon the American Trust and Savings
Bank, as garnishee.    The president of appellant stated in
his affidavit attached to the declaration in said cause, that
said Harper was indebted to it upon a certain draft upon
which it advanced $3,300 to the American Trust and Sav-
ings Bank at defendant's request, and default was entered
against Harper about two years thereafter; so that appel-
lant has but to take judgment and then may recover the
amount in the hands of the garnishee.    We do not hold
that the institution of an attachment suit will, in all cases,
preclude a bank from recovering a judgment against a party
to whom it has paid money by mistake upon a raised draft,
but we are of the opinion that when, as under the facts of
this case, a bank which has paid out money by mistake
upon a raised check elects not to inform the bank of the
forgery, so that it may protect itself, but elects to proceed,
as in this case, against the payee of the draft, it is such con-
duct as will tend to preclude a recovery from the bank to
which the money was originally paid.    In the case at bar,
the draft itself was never returned, or offered to be returned
to appellee.

Notwithstanding the draft was admitted to be good for
$33, appellant made its demand upon appellee after the said
period of nearly five years for the entire face of the draft,
together with the interest thereon from the time of its pay-
ment.    In the Merchants' National Bank case, *supra*, the
court said :

" The draft was turned over to appellant and by it
retained until it made investigation, whereupon, having
refused to redeem the draft, appellant returned it to appel-
lee and can not be heard now in the face of these facts, to
claim that appellee should again offer."

It is apparent from this and many other authorities that
a return or proper tender of the draft was essential, or
some act shown on the part of appellee, making such
return or tender useless.    Even if a return of the draft had

been made about five years after the discovery of the
forgery and its payment, it would have been too late pre-
sumptively to have availed appellee and therefore would
not have been such a return or tender of the draft as rea-
son and authority require.   This record does not show that
appellee has not been injured by appellant's conduct.
Appellant has shielded Harper as aforesaid, and has thus
actively prevented appellee or the American Trust and Sav-
ings Bank from prosecuting him or attaching his property
by concealing from all parties interested to know, a knowl-
edge of the forgery or alteration of the raised check,
through a long period, in which appellee and others inter-
ested might have protected themselves against loss.

After a careful examination of the record and a consid-
eration of the suggestions made by counsel, and without
extending this opinion in further comment, we are of the
opinion that appellant, by its conduct as shown in this
record, is estopped from a recovery.   The judgment of the
Circuit Court is affirmed.