State Bank of East Moline, Appellee, v. Alfons Standaert et al., Defendants. Anna De Vos, Appellant.

Gen. No. 10,207.

520

Opinion filed November 12, 1948. Released for publication December 1, 1948.

SHERWOOD L. COSTIGAN, of East Moline, and ANDREW KOPP, of Moline, for appellant.

BELL, FARRAR & SCOTT, of Rock Island, and SHAW & CHAMBERLAIN, of Geneseo, for appellee.

MR.' JUSTICE BRISTOW delivered the opinion of the court.

In a proceeding instituted by the plaintiff, State Bank of East Moline, to recover payment on a note from the defendants Alfons and Lena Standaert, and Alois and Anna De. Vos, makers and indorsers respectively, the circuit court of Rock Island county, in a trial without jury, entered a judgment in favor of the plaintiff, from which the defendant indorser,

Anna De Vos, appeals. The coindorser Alois De Vos died prior to the trial, and the suit was dismissed as to him.

The sole issue presented herein is whether the plaintiff bank gave the defendant indorser notice of dishonor as required under the terms of the Negotiable Instruments Law. (Ill. Rev. Stat. 1947, ch. 98, par. 110 [Jones Ill. Stats. Ann. 89.110].)

From the record it appears that on February 28, 1920, defendants Alfons Standaert and Lena Standaert made and delivered their promissory note to the defendants Alois De Vos and Anna De Vos, in the amount of $6,737.50 at 6 per cent interest, due five years after date, and payable at the office of the plaintiff bank. The note recited that it was secured by a real estate mortgage.

Before maturity the defendants Alois and Anna De Vos sold the note and mortgage to the plaintiff bank. The note was not paid, either at maturity on February 28, 1925, or during the ensuing years. Suit was instituted against the defendants in 1932, but the cause was stricken from the docket on May 28, 1941, for want of prosecution. Within a year thereafter, plaintiff commenced this proceeding.

At the trial the plaintiff bank contended that, when the note in controversy was not paid on the due date, notice of its dishonor was sent to the defendant indorsers.

In support thereof plaintiff offered the testimony of Leota Baker, who was employed as teller-bookkeeper in 1925, and charged with the duty of attending to maturing notes. She stated that it was the unswerving custom of the bank to send to the parties, 10 days prior to the due date of a note, a notice describing the note and specifying its maturity date. If the note was not paid at maturity, this same form of notice with the added notation that it had not been paid by

the maker, and that the indorser should make payment thereon, was mailed by the bank at the close of the day on which the note was due.

She further testified that she did not recall preparing or sending out the particular notice of dishonor to the defendant indorsers, Alois and Anna De Vos, on February 28, 1925, when the Standaerts failed to pay the obligation, but that during her seven years of service to the bank she knew of no instance where the bank failed to give notice of dishonor. Nor did she know who was charged with the actual mailing of the notice on February 28, 1925. With reference thereto she stated that probably Emma Callewaert mailed it since the post office was on her way home, or perhaps even she, Leota Baker, posted the bank mail. However, B. H. Ryan, who was assistant cashier in 1925, admitted in his testimony that Emma Callewaert was not in the employ of the bank on February 28, 1925. He reiterated the custom of the bank respecting notices of dishonor, and explained that some of the records of the bank pertaining to such notices, including the records in the instant case, were destroyed after 10 years.

He further explained that in 1930, a foreclosure suit was instituted by the Moline State Trust & Savings Bank which held a first mortgage on the same premises which secured the note in controversy under a second mortgage, and, inasmuch as there were insufficient funds from the sale of the property to pay the second mortgage, plaintiff's security was lost. In that foreclosure proceeding, defendant, Anna De Vos, had apparently testified respecting her signature on the note and the circumstances surrounding its sale to the plaintiff bank. However, at the trial of the instant case she denied participation therein.

The defendant, Anna De Vos, contends in this proceeding that she should not be charged with the pay-

ment of the note on the ground that she did not receive notice that the instrument had been dishonored, and therefore, under the Negotiable Instruments Law she was discharged. She maintains that she did not know that the note was not paid until suit was filed in 1932, some seven years after the obligation was due. In fact, the plaintiff bank loaned her some $19,000 in 1928 and 1929 without any reference to the note in controversy, or her liability thereon.

On the basis of the foregoing evidence, the circuit court entered judgment in favor of plaintiff and against the defendants, Alfons and Lena Standaert, and Anna De Vos. With the accrued interest on the note over a period of 27 years, the amount due was in excess of $11,947.83, the sum specified in the complaint, and for which judgment was entered. The defendant, Anna De Vos, contends that this judgment is contrary to the evidence and to the law.

The Negotiable Instruments Law provides that when a negotiable instrument has been dishonored by nonpayment, notice of dishonor must be given to the indorser, otherwise he is discharged. (Ill. Rev. Stat. 1947, ch. 98, par. 110 [Jones Ill. Stats. Ann. 89.110].) Such notice may be given by mail, and where it is duly addressed and deposited in a post office, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails. (Ill. Rev. Stat. 1947, ch. 98, par. 126 [Jones Ill. Stats. Ann. 89.126].)

This requirement of addressing and depositing the notice in the post office does not prescribe the precise testimony to be introduced in a cause, but rather sets forth the ultimate facts to be established by the evidence. In other words, to charge an indorser with the payment of a note, the plaintiff must establish that the notice of dishonor was addressed and actually mailed, (*Vaughan v. Potter*, 131 Ill. App. 334; *Geneva Organ Co. v. Ambassador Theatres Corp.*, 249

Ill. App. 390) and these facts may be proven by direct or circumstantial evidence as any other fact in the case.

In the case at bar the only evidence of plaintiff's compliance .with the statutory requirement of giving notice of dishonor to the indorser was the testimony of Leota Baker that it was the custom of the bank at the close of the business day on which a note was due and unpaid to send a notice to the parties describing the note and stating that it was not paid by the maker, and that the indorser should make payment thereon.

Although Leota Baker was charged with preparing these notices, she did not recall preparing or sending any particular notice of dishonor to the defendant, Anna De Vos, on February 28, 1925. Moreover, she did not know who was charged with posting the bank's mail on that date. She stated that perhaps Emma Callewaert did it, since the post office was on her way home, or perhaps even she, herself, posted the mail. Emma Callewaert, however, was not in the employ of the bank on the due date of the note, and there is no certainty as to who posted the mail, or whether, in fact, any mail was posted on that date. Therefore, other than the description of the general custom of the bank of notifying indorsers, the only evidence tending to prove, even circumstantially, that notice of dishonor was prepared and mailed to the defendant was the inference from Leota Baker's self-serving declaration that she always did her duty and never failed to send out a notice of dishonor.

The courts have taken cognizance of the intricacies and expansion of business enterprises, and the cases reveal a liberalizing tendency with reference to the proof required to establish the posting of a letter. (*Ponder v. Jefferson Standard Life Ins. Co.*, 6 F. (2d) 300; *Peirson-Lathrop Grain Co. v. Barker* (Mo. App.), 223 S. W. 941; 86 A. L. R. 539 *et seq.*) From a review of the cases, however, it is evident that while courts

may not require the person mailing the letter for a large concern to have a distinct recollection of the particular letter, there must be some evidence on the part of the person whose general practice it was to post the mail that the custom was complied with on the date in question. (25 A. L. R. 9, 13; 86 A. L. R. 539, 541; 31 C. J. S. 781; *Peirson-Lathrop Grain Co. v. Barker, supra; Cook v. Phillips,* 109 N. J. L. 371, 162 Atl. 732 (1932).)

In *Cook v. Phillips, supra,* the court stated:

''We do not think that the mere dictation or writing of a letter coupled with evidence of an office custom with reference to the mailing of letters is sufficient to constitute proof of mailing the same, in the absence of some proof or corroborating circumstances sufficient to establish the fact that the custom in the particular instance had in fact been followed.''

In the instant case there was not even evidence of the dictation or writing of the particular notice of dishonor.

This prevailing judicial opinion, moreover, has been followed by the Illinois courts. In *Meyer v. Krug,* 298 Ill. App. 625, the court held that the evidence was insufficient to establish a presumption of mailing where the plaintiff merely showed a general business practice with reference to mailing letters, but did not offer evidence by the person charged with the duty of mailing the letters on the particular date, that the custom was followed.

The court stated therein:

''Plaintiff further contends that having proved a custom as to the method of mailing letters from that office, proof of that custom would raise a presumption that the letters were mailed and received by the defendant. We cannot find that the law has gone that far.''

Plaintiff argues that the law in Illinois with reference to the character of proof required to establish

the mailing of a letter is unsettled, and that *W. A. Fowler Paper Co. v. Bert Jones Sales Book Co.*, 183 Ill. App. 310, is contrary to the *Meyer* case, and supports plaintiff's position.

A careful reading of this case reveals not only that considerably more evidence of mailing and receipt was presented therein than in the case at bar, but indicates that the Illinois courts follow a stringent rule with reference to the sufficiency of evidence of mailing.

In this case, the "manager of the bank testified that he wrote a letter to each of the indorsers notifying them of the dishonor of the note, and passed it to the boy in his department whose duty it was to copy them in the copy book and take them to the mailing department to be mailed." Moreover, a book copy of such letters was introduced in evidence. With reference to the sufficiency of this evidence of mailing, which is far more complete than that presented in the instant case, where there were no records offered by plaintiff, and no testimony of the preparation of any specific notice, the Illinois court stated: "The evidence first introduced bearing on the question of mailing the letter may not, when considered alone, have been sufficient to show mailing . . . ." The court continued that since there was testimony of a witness who saw the notice on defendant's desk and testified as to its contents, the evidence of receipt of such notice was sufficient.

It is not clear just how this case sustains plaintiff's contention that mere proof of a custom of sending out notices of dishonor, and a statement that the bank's mail was always posted by someone, established that a particular notice was actually mailed.

It would serve no useful purpose to analyze each case cited by the plaintiff and set forth the additional evidence of mailing presented therein supplementing the proof of the business practice. It is suf-

ficient to point out that in the instant case there is no evidence that the particular notice was prepared, or put in an envelope, or addressed, or even deposited in a place where it would ordinarily be taken up by an employee charged with the duty of posting the bank's mail, as in the cases cited by plaintiff. Plaintiff offered no copies of the notice, or records of any kind indicating that the notice was mailed herein. Therefore, even under the most liberal interpretation of the law, plaintiff's evidence is insufficient. (*Prudential Trust Co. v. Hayes,* 247 Mass. 311, 142 N. E. 73.)

Under the Negotiable Instruments Law, plaintiff had a duty to establish the fact that notice of dishonor was mailed to the defendant indorser in order to impose liability on her for the payment of the note. This duty is not excused by the fact that 22 years after the note matured the only evidence plaintiff could produce was testimony as to the general practice of the bank in handling maturing notes; nor by the fact that plaintiff destroyed its records in a case while it was pending on the court docket. The fact that lapse of time has rendered it impossible to supply the measure of proof required by the law does not lessen plaintiff's duty.

The plaintiff bank waited seven years after the note matured before it took any action thereon, and after suit was filed in 1932, the cause was permitted to lie dormant for nine years, until it was dismissed by the court for want of prosecution in 1941, and finally, was reinstated.

The fact that defendant's credibility was impeached by the evidence that she testified in a separate cause, despite the fact that she denied participation therein, does not excuse plaintiff from establishing the essential elements of its cause of action. There was nothing contained in defendant's testimony in that other proceeding which tended to aid plaintiff's

case herein. Plaintiff must rely upon the strength of its own evidence in order to recover, rather than upon the limitations of defendant's testimony.

It is the opinion of this court, in the light of the foregoing analysis, that plaintiff failed to establish, either by direct or circumstantial evidence, that it mailed the notice of dishonor to the defendant indorser, Anna De Vos, on February 28, 1925, when the obligation was due, and therefore, under the terms of the Negotiable Instruments Law, the defendant indorser was discharged. The judgment of the circuit court imposing liability upon the defendant indorser for the payment of the $6,737.50 note, together with the accrued interest, amounting to a total of $11,947.83, was therefore contrary to the law, and should properly be reversed.

*Judgment reversed.*