### Maggie Webb, Appellee, v. Pacific Mutual Life Insurance Company, Appellant.

### Gen. No. 45,768.

Opinion filed November 25, 1952. Released for publication December 16, 1952.

TAYLOR, MILLER, BUSCH & MAGNER, of Chicago, for appellant; E. MARVIN BUEHLER, of Chicago, of counsel.

RICHARD ALTIERI, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment for $2,215.87 in a case tried by the court without a jury. The complaint alleged that defendant issued its policy of insurance October 7, 1922 in the sum of $3,000 on the life of Calvin L. Webb, with plaintiff as beneficiary; that the insured died July 19, 1946, whereupon there became due the sum of $3,000. To this complaint defendant filed a sworn answer, alleging that on October 17, 1943 the policy lapsed for nonpayment of a premium and that in accordance with the "nonforfeiture" provisions of the policy (sometimes referred to as the "Cash Loan and Non-Forfeiture Benefits" provisions), defendant applied the value of the policy as of that time to paid-up nonparticipating term insurance in the sum of $1,959, which term insurance expired March 29, 1946, and that therefore no insurance was in effect at the time of the insured's death. To this sworn answer plaintiff filed a sworn reply. Paragraphs 2 and 3 of the reply assert that the policy was in effect on the date of death, pursuant to the "Cash Loan and Non-Forfeiture Benefits" provision, and that "including the tables therein," there was in effect at the time of the insured's death, " 'Paid-Up Term Insurance' for the face amount of said policy and extended to the year 1955."

██ The case went to trial on the issues so presented. Upon the trial plaintiff testified that she was the widow of the insured; that "I know of my own knowledge that he sent that premium in [referring to the premium due October 17, 1943]. I know it was a few days late but every premium he paid. I don't know what date he sent it in, but I do know it was late and they sent it back." Defendant had taken the deposition of one Paul Owen, of Mississippi, who testified that his agency had charge of the mailing of premium

414

notices, and that they mailed notices to the insured; that premium notices were mailed by the cashier and that he supervised their mailing. He was then asked whether he was familiar with the practice in regard to the mailing of notices, to which an objection was sustained. After that, objections to a series of questions and answers with regard to office practice and to the mailing of notices were sustained by the court. This was error. In the case of *State Bank of East Moline v. Standaert,* 335 Ill. App. 519, 524, 525, the court held that if there was some evidence of the mailing of a particular letter, the evidence with respect to this practice would be material. In this case it is obvious by the questions propounded to the witness that it was defendant's intention to prove that the letter was actually sent. The evidence should have been admitted, and its ultimate materiality determined by proof of the sending of the letter. A sound rule is announced in *State Bank of East Moline v. Standaert, supra:*

"The courts have taken cognizance of the intricacies and expansion of business enterprises, and the cases reveal a liberalizing tendency with reference to the proof required to establish the posting of a letter. (Citing cases.) From a review of the cases, however, it is evident that while courts may not require the person mailing the letter for a large concern to have a distinct recollection of the particular letter, there must be some evidence on the part of the person whose general practice it was to post the mail that the custom was complied with on the date in question."

In Wigmore on Evidence, 3 Ed., Vol. 1, sec. 95, pp. 525, 526, it is said:

"The habit of a *commercial house,* maintaining systematically a mailing or other transmission service is equally relevant. * * * The same application of the principle would admit any person's usual course of

*business practice* to evidence *any act of delivery or transmission,* such as the sending of a notice, or the placing of letters in the mail box; * * * .''

██ Defendant also sought to prove that a letter was written by the cashier to the insured on November 12, 1943. The court admitted testimony that the letter was written. Pursuant to notice served on plaintiff's counsel to produce the original of the letter, which counsel did not do, defendant offered a carbon copy, which the witness testified was an accurate copy of the notice. The court rejected this carbon copy. The letter was addressed to insured and stated, in substance, that November 17, 1943, was the last day of grace, and inquired of the insured what he desired to do with respect to a note held by defendant. In reply to this, a letter was received from the insured dated November 22, 1943, in an envelope post-marked November 24, 1943, enclosing his check for the insurance premium. He stated, ''I was out of Chicago and did not return until November 21st—and my notice was here.'' The grace period had expired seven days prior to this. The court also admitted the agent's testimony that the insured's check, which had been sent in late, had been returned to him, but refused to admit the carbon copy of the letter returning the check. This should have been admitted. *Union Surety & Guaranty Co. v. Tenney,* 200 Ill. 349, 352; *Pittsburgh C. C. & St. L. Ry. Co. v. Gage,* 286 Ill. 213, 220, 221; *Hickey v. Edwin L. Reed & Co.,* 197 Ill. App. 539; *Dougherty v. Knowlton,* 19 Ill. App. 283, 286.

 Testimony of an actuary was offered with respect to the length of term which the policy would be continued in force under the ''Cash Loan and Non-Forfeiture Benefits'' provisions, and the testimony of an additional actuary offered concerning computation of interest and proper computation of the length of term insurance. Both testified that the term insurance

had expired before the death of the insured and that, therefore, the policy had no value at the time of his death. The testimony of these witnesses was stricken, on the theory that it was dependent on the admissibility of defendant's record which had been excluded. The testimony which was thus excluded was a photostatic copy of defendant's record card of premiums and renewal payments, as well as the original thereof. The court sustained plaintiff's objection to the admission of these documents, on the ground that the photostatic copy was secondary evidence and had not been properly identified. It appears that this evidence had been adduced on the taking of a deposition of one of the officials of the defendant company, and that after the taking of the deposition, instead of the original records, a photostatic copy was attached to the deposition. The court erred in its ruling. *Metropolitan National Bank v. Merchants Nat'l Bank,* 77 Ill. App. 316, 319; *Fisher v. Greene,* 95 Ill. 94, 99; *Springer v. Cobb,* 132 Okla. 11, 12, 268 Pac. 1111, 1112; *Hauenstein v. Gillespie,* 73 Miss. 743, 751, 19 So. 673, 674; *Ide v. Pierce,* 134 Mass. 260, 265. Moreover, the objection to the admission of such evidence should have been made by motion to suppress before the trial. *Williams v. Press Publishing Co.,* 126 Ill. App. 109, 111; *Illinois Central R. Co. v. Foulks,* 191 Ill. 57, 74; *Louisville, N. A. & C. Ry. Co. v. Shires,* 108 Ill. 617, 625. The test laid down is whether the objection might have been obviated by better evidence. Clearly, this is that kind of objection. We have examined plaintiff's cases on this point. They do not support her contention.

 It appears from plaintiff's sworn reply that the real issue in this case was the length of time for which the paid-up term insurance was continued in force. This issue was made by paragraphs 2 and 3 of the reply, which specifically rely on the cash loan and nonforfeiture benefits provisions as giving life to the

policy, and agree with defendant's answer that the paid-up term insurance provision is the one applicable in this case. Plaintiff contends, however, that according to the face of the policy, this paid-up term insurance should have run to the year 1955 and was therefore in force at the time of death. There are two other paragraphs in the reply, but these do not raise an issue. Paragraph 1 in general terms reaffirming the averments in the statement of claim, is not adequate and cannot be considered in determining the issues. Paragraph 4 states that premiums had been paid up to the date of the insured's death "as required or permitted by said policy." We assume that what was meant by this was that the paid-up term insurance referred to in paragraph 3 had been paid for by the previous premiums. Otherwise, this statement would be inconsistent with paragraphs 2 and 3 of the *sworn* answer. The court did not apply the paid-up term insurance clause as the test of whether the insurance was alive at the time of the death of the insured, but instead held that defendant had not proved that the policy had lapsed, although it seems to be clear from the record that no premiums were paid nor any attempt made to pay any premiums after the one which became due October 17, 1943.

 We have considered plaintiff's argument with respect to the waiver of the prompt payment of premiums by the insured. This is not supported by the evidence. We have also considered her argument with respect to the fact that the insured did not exercise his option, but that the same was applied by defendant before the expiration of the date fixed in the policy. We see no merit in this argument. If the insured had exercised an option in his lifetime and within the period provided for by the policy, the point would then be relevant. With respect to the alleged overcharge of interest, we have examined the record and so far

as we can find, defendant is correct in its statement that this point was never presented to the trial court nor was its ruling dependent upon this argument. It would appear, in the light of the actuary's testimony, that interest was correctly computed, but we do not consider that point to be before us.

■ This judgment must be reversed and the cause remanded because of the errors hereinbefore set out. On the retrial of this case, the court should consider that the issue made by these pleadings is whether the paid-up term insurance was in effect at the time of the death of the insured.

Judgment reversed and cause remanded, with directions to the trial court to grant a new trial and to take further proceedings not inconsistent with the views herein expressed.

*Judgment reversed and cause remanded with directions.*

ROBSON, P. J. and TUOHY, J., concur.