FLORENCE GOETZ, Plaintiff-Appellee, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.—(TRAVELERS INSURANCE COMPANY *et al.*, Defendants-Appellees.)

(No. 73-269;

Second District (1st Division)—April 2, 1975.

*Rehearing denied June 5, 1975.*

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan (Julian Johnson, of counsel), for appellant.

John F. Grady, of Waukegan, for appellee Florence Goetz.

Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellee Travelers Insurance Company.

Mr. JUSTICE GUILD delivered the opinion of the court:

On October 31, 1966, the plaintiff, Florence Goetz, was involved in an automobile collision with another car driven by LaRue Pearson, resulting in injuries to both Goetz and Pearson. Shortly thereafter, Pearson died as a result of his injuries. The automobile driven by Goetz was insured by the defendant, Country Mutual Insurance Company, for uninsured-motorist coverage. Goetz demanded arbitration under the uninsured-motorist provisions of the Country Mutual policy to recover for her personal injuries. Country Mutual refused arbitration on the ground that Pearson was not an uninsured motorist but was an insured of the defendant, Travelers Insurance Company, under a policy of that company issued under the Illinois automobile assigned risk plan (Ill. Rev. Stat. 1965, ch. 95½, par. 7—501). Four years later, in November, 1970, Goetz instituted this declaratory judgment action against Country Mutual,

Travelers and the administrator of the estate of LaRue Pearson to resolve the question of insurance coverage.

The trial court, sitting without a jury, entered an order finding that at the time of the collision in question Travelers did not insure Pearson or the motor vehicle driven by him and that Pearson was an uninsured motorist driving an uninsured vehicle within the meaning of the Country Mutual policy. Accordingly, the trial court ordered Country Mutual to proceed with arbitration of the uninsured-motorist claim of the plaintiff, Goetz.

The trial court based its order, from which Country Mutual appeals, upon its legal conclusions (1) that compliance with the provisions of rule 14B of the rules and regulations of the Illinois automobile assigned risk plan, a notice provision which will be hereinafter detailed, is not legally required; and (2) that noncompliance with the provisions of said rule 14B does not result in any continuation or renewal of insurance coverage. In addition, the trial court found, as a conclusion of fact, that Travelers had proved its compliance with rule 14B. Country Mutual challenges these conclusions of law and fact and argues (1) that compliance with rule 14B is legally required; (2) that noncompliance with rule 14B results in a continuation of insurance coverage; and (3) that Travelers failed to prove compliance with said rule. Country Mutual concludes its argument by contending that since Travelers failed to prove its compliance with said rule, Pearson's insurance coverage with Travelers continued in effect and thus Travelers should be obligated to Goetz under its policy with Pearson, thereby relieving Country Mutual of its obligation under the uninsured motorist coverage of its policy with Goetz. We find, after due consideration of the record herein and the law applicable thereto, that the contentions of Country Mutual are correct, and accordingly we reverse the judgment below.

Section 7—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1965, ch. 95½, par. 7—501) provides for an assigned risk plan in Illinois. The salutory purpose of this plan is to provide automobile bodily injury and property damage liability insurance to those individuals who cannot otherwise obtain such insurance. All insurance companies authorized to write automobile bodily injury liability insurance in Illinois are required to be subscribers to the plan. The defendant, Travelers, was a subscriber to the plan. The plan operated under rules which were adopted following approval by the Illinois Director of Insurance.

In 1965 and 1966, the relevant period in the present case, the Illinois automobile assigned risk plan had in effect a set of rules and regulations, a copy of which were admitted into evidence in this case. Under section 13 of the plan, an applicant for insurance was assigned to a specific in-

surance company, by rotation, for a 3-year period. Under section 14B of the plan, the insurer was required to notify its insured prior to the expiration of the initial policy and the inception of the first and second renewal policies of the amount of premium that would be due and the date it was due in order to renew his policy, or alternatively, that the insurer was unwilling to renew coverage. Specifically, section 14B provides in relevant part as follows:

"B. *First and Second Renewal Policies.*

At least 45 days prior to the inception date of the first and second renewal policies the designated insurer shall notify the applicant that:

(1) A renewal policy will be issued provided the renewal premium stipulated by such insurer is received at least five (5) days prior to the inception date of such policy, or

(2) A renewal policy will not be issued for the reason that the applicant is not entitled to insurance under the Plan.

A copy of such notice shall be filed with the producer of record and the Plan. In the event the insurer will not issue a renewal policy, the reason supporting such action, together with copy of said notice, shall be filed with the Plan."

Travelers also had its own company rule which was identical with section 14B of the plan. Section 143.5 of the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 755.5), which requires the mailing or delivery of a certain notice to an insured of an insurer's intention not to renew a policy, has no direct application to the instant case since that statute became effective after the relevant period herein.

On August 27, 1965, the decedent, LaRue Pearson, made application through the Price Insurance Agency for automobile insurance under the plan. Pearson's application was forwarded by the Price Agency to the plan, which assigned the risk to Travelers. Pearson paid the premium upon which the Price Agency received a commission. Travelers issued an automobile insurance policy to Pearson for a 1-year period which commenced on September 8, 1965.

Shortly following the October 31, 1966, collision in question, Travelers investigated the accident, took a statement of Mrs. Goetz, and concluded that the Pearson policy had lapsed on September 10, 1966, for failure of Pearson to pay a renewal premium. However, because of the lapse of time between the collision and the filing of this lawsuit, Travelers had no file material concerning the claim against Pearson and had no records to indicate whether or not it had sent the 45-day notice to Pearson prior to the expiration of his policy. Travelers' proof on the issue of notice was limited to the testimony of Charles Spurgeon, district manager of Trav-

elers' Chicago office, who testified to Travelers' general office practice with respect to premium-renewal notices to assigned risk insureds.

Spurgeon's testimony indicated that in 1966 Travelers' Chicago office serviced approximately 25,000 insureds and about 1,000 of these were assigned risk insureds. Travelers kept assigned risk registration cards with the name, address and policy information on the insured and a correspondence file for each assigned risk. Each month, one or two clerks who handled assigned risk files would search through the cards and pull the card and corresponding correspondence file on each insured whose policy would expire within 90 days. Within 45 days of the expiration date, the clerks would type or write on a printed form a notice of renewal premium with a statement included to the effect that if the premium were paid within 5 days of expiration, a renewal policy would be issued. The clerks would stuff the envelopes and deliver them to the mail room to be run through a postage meter. The notices were mailed, with the original being sent to the insured and a copy being sent to both the assigned risk plan and the agency.

In the event an insured did not pay the premium, Travelers would mark its file "dead" and a photocopy of the bill would again be sent to the assigned risk plan, indicating that the policy was not renewed. No further notice was sent to the insured. The file card would be retained for 3 years and then destroyed.

Robert Price of the Price Agency testified that had Pearson renewed his policy with Travelers, the Price Agency would have received a renewal commission thereon, which would have been reflected in his records. His records did not reflect the receipt of such a commission.

Robert Price further testified that he did not recall whether he had received a copy of the notice of renewal, that he did not have any record of receipt of such notice and that unless he had a reason to retain such notice he would normally destroy his files following a 3- or 4-year period. Price was not an agent of Travelers. Robert Rasmussen, manager of the Illinois automobile insurance plan (formerly the Illinois automobile assigned risk plan) since 1965, testified that he had no copy of a renewal notice pertaining to LaRue Pearson, that his office retains such records for only three years plus the current year, and that he first had occasion to search his records for such a notice in 1972.

■■■ We first deal with the issue of whether compliance with the notice provisions of rule 14B is legally required. As noted above, the rules and regulations of the assigned risk plan were adopted by the plan following approval by the Illinois Director of Insurance. Section 401 of the Illinois Insurance Code (Ill. Rev. Stat. 1965, ch. 73, par. 1013) grants certain rulemaking power to the Illinois Director of Insurance and section

7—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1965, ch. 95½, par. 7—501) imposes a duty upon the Director to establish rules for the administration of the assigned risk plan. Rules and regulations of administrative agencies have the force of statutes. (*Williams v. New York Central R.R. Co.* (1949), 402 Ill. 494, 501, 84 N.E.2d 399, 403; *Margolin v. Public Mutual Fire Insurance Co.* (1972), 4 Ill.App.3d 661, 666, 281 N.E.2d 728, 732.) Therefore, a duty is imposed on insurers to comply with the rules herein equivalent to that which would be imposed by a comparable statute. In addition, the supreme court has determined that automobile insurance is no longer a private contract merely between two parties but is a matter of public concern. (*Simmon v. Iowa Mutual Casualty Co.* (1954), 3 Ill.2d 318, 121 N.E.2d 509.) The obvious purpose of the notice required by section 14B is to warn the insured so that he might protect himself with continuous insurance coverage and, as a by-product, protect other members of the public by affording insurance in the event of a collision. Thus, we cannot relegate the rules adopted by the Illinois automobile assigned risk plan to the status of an "immaterial regulation of the State Insurance Department" as urged by the appellees. Rather, such rules, including section 14B, have the force of statute and compliance therewith is legally required.

We next consider the effect of noncompliance with section 14B. In a closely analogous situation, the court in *Shore v. Coronet Insurance Co.* (1972), 7 Ill.App.3d 782, 288 N.E.2d 887, held that noncompliance with a renewal notice statute, which, as noted above, became effective in Illinois on January 1, 1968, resulted in full continuation of insurance coverage, notwithstanding the failure of the insured to renew. In *Shore*, plaintiff had an automobile insurance policy with uninsured-motorist coverage with the defendant Coronet which had effective dates of from 12:01 A.M. on April 25, 1967, to 12:01 A.M. on April 25, 1968. Some 14 hours after the latter time, plaintiff was involved in an automobile collision with an uninsured motorist. Plaintiff instituted an action to recover under his uninsured-motorist coverage. The pertinent sections of the statute under construction therein were as follows:

> "No company shall fail to renew an automobile liability insurance policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least 30 days' advance notice of its intention not to renew.
>
> This Section does not apply if the company has manifested its willingness to renew." Ill. Rev. Stat. 1969, ch. 73, par. 755.5.
>
> "(b) 'Renewal' or 'to renew' means the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same in-

surer or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term; * * *." Ill. Rev. Stat. 1969, ch. 73, par. 755.2(b).

The defendant company had failed to give plaintiff notice of its intent to renew or cancel the policy. It contended that it had been waiting for plaintiff to renew her coverage and when she did not, the policy expired. Plaintiff contended that under the statute the policy was renewed and she was insured at the time of the collision. The trial court held for the defendant. The appellate court reversed, holding that the company had a duty to give notice to plaintiff even if it were willing to renew, and that absent such notice, the policy continued in full force and effect. The court stated:

> "* * * silence on the part of defendant was not a manifestation of its willingness to renew the policy in question. In our view, to comply with the statute, defendant had the duty to give notice to plaintiff even if it were willing to renew the coverage. Absent such notice, the policy continued in full force and effect. Such an interpretation seems logical in view of the legislative intent that all insured have a reasonable opportunity to maintain continuous automobile insurance coverage." 7 Ill.App.3d 782, 785, 288 N.E.2d 887, 889.

■■ While the court in *Shore* construed a statute effective more than 1 year after the relevant period involved in the instant case, in our view, the construction placed upon the statute therein is fully applicable to the rules of the assigned risk plan in effect at the time of the instant collision. That is, the instant rules express an intent on the part of the Director of Insurance, having the force of statute, to require insurers to give a certain notice to their assigned risk insureds prior to the expiration of their policies. The purpose of such notice, as is the purpose of the subsequently effective statute, is to afford an insured a reasonable opportunity to maintain continuous automobile liability insurance coverage. The failure of the insurer to give the notice required by section 14B results in the continuation of insurance coverage.

This result is further supported by our holding in *Shiaras v. Chupp* (1974), 18 Ill.App.3d 722, 310 N.E.2d 481. In that case we held that while the insurer is not required to notify its insured in the particular manner prescribed by sections 143.4 and 143.5 of the Illinois Insurance Code (Ill. Rev. Stat. 1971, ch. 73, pars. 755.4 and 755.5) in the case of an insurer's failure to renew an existing policy at the end of its term, an insurer does not have the power to refuse to renew a policy because of nonpayment of premium without giving a notice of any kind. We further stated therein that:

"Clearly, the legislature's intention in drafting these statutes is the protection of the insured from capricious and arbitrary actions of an insurer. Such actions taken without notice to the insured, even when reasonable, could leave a car owner uninsured for long periods of time while he attempts to secure insurance coverage from another company. The legislature intended that all insured motorists should have a reasonable opportunity to maintain continuous automobile liability insurance coverage. (*Shore v. Coronet Insurance Co.* (1972), 7 Ill.App.3d 782, 288 N.E.2d 887.) Consequently, an insurance company is under a duty to reasonably remind its insured that a premium is due. * * *

* * * The notice must be given in a manner which would reasonably remind the insured that his premium is due." 18 Ill.App.3d 722, 726, 310 N.E.2d 481, 484.

Having concluded that under rule 14B notice is legally required and that failure to give such notice results in a continuation of insurance coverage, we now turn to the question of whether Travelers' proofs were sufficient to establish that notice had, in fact, been given. Prior to the resolution of this issue, however, we first resolve a preliminary issue raised by the appellees. The appellees, Travelers and Goetz, assert that the burden of proving that Travelers did not send the notice as set forth in rule 14B rests with Country Mutual. They base this contention first upon the theory that the burden of proving a negative averment rests with the party who asserts the affirmative. In this case, they argue, the burden of proving whether notice was sent relates to proof of a negative proposition—that is, the negative proposition that Pearson was not insured by Travelers. Travelers then goes on to argue that since the question of whether Pearson was not insured by Travelers is a negative proposition, therefore the burden of proof on that issue rests with the party who asserts that Pearson was insured by Travelers, which in this case is Country Mutual. Secondly, they argue that since the issue of notice arose "collaterally" in this case, since this is not an action between Travelers and its insured; therefore, the burden of proving the collateral issue rests with the party who seeks to benefit from it—that is, Country Mutual.

■■■ In our view, the burden of establishing that Pearson was not insured by Travelers rested with Travelers. Appellees' contention that the issue of notice is collateral in this case is simply not borne out by the pleadings and proofs herein. Whether or not notice was sent is an essential element in this case. As to the appellees' argument regarding proof of a negative averment, we believe that the burden of proving whether Travelers sent the required notice rests with Travelers because Travelers was the sole party in existence which was in possession of the

proofs necessary to establish that proposition. As stated by the supreme court in *Abhau v. Grassie* (1914), 262 Ill. 636, 638, 104 N.E. 1020, 1021:

"The weight of authority is, that whoever asserts a claim or defense which depends upon a negative must establish the truth of the allegation * * *. It is, however, sometimes stated, that where the subject matter of a negative averment lies peculiarly within the knowledge of the other, the averment is taken as true unless it is disproved by that other party. * * * It is not easy to lay down a general rule by which it may be readily determined upon which party the burden of proof will lie when a negative is averred in the pleading. Each case depends upon its own peculiar circumstances."

See also *Great Western R.R. Co. v. Bacon* (1863), 30 Ill. 347.

As noted above, Travelers' proof on the issue of notice was limited to testimony as to regular office practices. Travelers argues that this should be held sufficient to establish that it sent notice on this particular occasion because of the presumption in favor of the regularity of business transactions (citing 18 I.L.P. *Evidence* § 26 (1956), and 46 C.J.S. *Insurance* § 1316 (1946)) and because the finding was not contrary to the manifest weight of the evidence. In our view, however, the above-mentioned presumption is insufficient to transform evidence insufficient as a matter of law into sufficient evidence.

■■ The rule in Illinois is that proof of a regularly followed business routine is admissible providing there is some evidence that it was followed in the particular case. (*Webb v. Pacific Mutual Life Insurance Co.* (1952), 348 Ill.App. 411, 109 N.E.2d 258.) Where, however, as here, there is no evidence that the practice was followed on the particular occasion, proof of the routine is insufficient to prove that it was followed in the particular case. *State Bank v. Standaert* (1948), 335 Ill.App. 519, 524-25, 82 N.E.2d 393, 396. In that case the court noted:

"* * * From a review of the cases, however, it is evident that while courts may not require the person mailing the letter for a large concern to have a distinct recollection of the particular letter, there must be some evidence on the part of the person whose general practice it was to post the mail that the custom was complied with on the date in question. (Citations.)

In *Cook v. Phillips, supra,* the court stated:

'We do not think that the mere dictation or writing of a letter coupled with evidence of an office custom with reference to the mailing of letters is sufficient to constitute proof of mailing the same, in the absence of some proof or corroborating circumstances

sufficient to establish the fact that the custom in the particular instance had in fact been followed.'

In the instant case there was not even a evidence of the dictation or writing of the particular notice of dishonor.

* * * In *Meyer v. Krug,* 298 Ill.App. 625, the court held that the evidence was insufficient to establish a presumption of mailing where the plaintiff merely showed a general business practice with reference to mailing letters, but did not offer evidence by the person charged with the duty of mailing the letters on the particular date, that the custom was followed.

The court stated therein:

'Plaintiff further contends that having proved a custom as to the method of mailing letters from that office, proof of that custom would raise a presumption that the letters were mailed and received by the defendant. We cannot find that the law has gone that far.' "

Additionally, as we have noted above, Travelers investigated the instant collision shortly after its occurrence and concluded that it did not insure Pearson. If Travelers had, in fact, notified Pearson in accordance with rule 14B, which was also a company rule, this court is at a loss to understand why it failed to preserve its records of such notice in light of the probability of a claim against it. In any event, we concur with the statement of the court in *Standaert,* which is applicable to the defendant, Travelers, that:

"The fact that lapse of time has rendered it impossible to supply the measure of proof required by the law does not lessen plaintiff's duty." 335 Ill.App. 519, 527, 82 N.E.2d 393, 397.

■■ In summary, we hold that compliance with rule 14B of the rules and regulations of the Illinois automobile assigned risk plan is legally required; that noncompliance therewith results in a continuation of insurance coverage; and that the proofs herein failed to establish such compliance. Therefore, Pearson's coverage under his Travelers policy continued in full force and effect up to and including the time of the instant collision. Since Pearson was an insured at the time of the collision, it follows that plaintiff's uninsured-motorist coverage under her Country Mutual policy is inapplicable.

For the foregoing reasons, the judgment of the trial court is hereby reversed and the case remanded for entry of an order consistent with the views expressed herein.

Reversed and remanded.

SEIDENFELD, P. J., and HALLETT, J., concur.