STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant Below, Appellant,

v.

Suzanne MUNDORF, Plaintiff Below, Appellee.

No. 495, 1994.

Supreme Court of Delaware.

Submitted May 16, 1995.
Decided June 5, 1995.

Robert B. Young, Dover, for appellant.

Edward C. Gill, Wolhar & Gill, P.A., Georgetown, for appellee.

Before WALSH, HARTNETT and BERGER, JJ.

WALSH, Justice:

In this appeal from the Superior Court, we consider the requirements of the Delaware Assigned Risk Plan (the "Plan") with respect to the sending of notice of cancellation of a motor vehicle insurance policy by insurance companies to policyholders. Specifically, we hold that an insurer is required to send notice of cancellation where the assigned risk policy expires or lapses according to its terms by reason of the policyholder's failure to pay the premium to renew coverage. We view the Plan's explicit provisions as mandating such notice. Accordingly, we affirm the ruling of the Superior Court.

**I**

In early November, 1991, the plaintiff-appellee, Suzanne Mundorf ("Mundorf"), contacted Naomi Wheatley ("Wheatley") of Wheatley's Insurance Company, an independent insurance agent/broker located in Seaford, Delaware, to procure insurance for a new car. Wheatley took Mundorf's application for automobile insurance and placed it in the Plan.[1] Wheatley then accepted a partial premium and told Mundorf that she would be charged for further premiums once she was assigned to a particular insurance carrier. Mundorf was eventually assigned to defendant-appellant State Farm Mutual Automobile Insurance Co. ("State Farm"). *See* 21 *Del.C.* § 2905.

State Farm issued Mundorf an automobile liability policy under the Plan covering the period from November 11, 1991, to November 11, 1992. The policy included an annual premium of $1318.00, which was payable in five monthly installments. Mundorf began paying her monthly premiums on December 3, 1991, and she made her final premium payment on April 28, 1992. In May or June, 1992, Mundorf received, along with her insurance card that was issued for the remaining term of her initial policy, a "notice" from State Farm apparently indicating her next year's annual premium for a renewal of insurance coverage.[2] There was no correspondence between the parties regarding the renewal of Mundorf's insurance coverage after this date. Mundorf continued to operate her vehicle after her insurance policy expired more than five months later. Mundorf did not pay State Farm a renewal premium, and State Farm did not send her notice that her coverage was terminated.

On December 24, 1992, Mundorf was involved in a car accident in which she suffered modest injuries. She demanded payment from State Farm for her lost wages and medical expenses resulting from the accident, claiming that State Farm was obligated under her insurance policy to supply PIP coverage benefits. State Farm refused.

On May 12, 1993, Mundorf filed suit against State Farm in the Superior Court for damages, asserting that her initial insurance policy with State Farm was still in effect on the date of the accident. State Farm responded that the initial policy lapsed by its own terms on November 11, 1992, and, because Mundorf failed to renew coverage by not paying a renewal premium, she was not covered by any insurance policy with State Farm at the time of the accident. After

---

1. Under the Plan, an applicant who cannot acquire motor vehicle insurance through normal channels because of his or her high risk status files an application for insurance with the Insurance Commissioner. Coverage for the applicant begins once the application is completed. The insurance company, however, is not aware that it is the designated insurer until the Insurance Commissioner notifies the carrier of the assignment. The carrier then has fifteen days to issue a policy to the applicant. Participation in the Plan is compulsory for all Delaware insurance carriers. *See generally Berg v. American Cas. Co.,* Del.Supr., 597 A.2d 4, 6 (1991); 21 *Del.C.* § 2905.

2. The exact notice received by Mundorf has not been made part of the record because neither party has been able to locate the original or a duplicate. The content of the notice is based upon Mundorf's recollection.

limited discovery, both parties moved for summary judgment.

The Superior Court granted summary judgment for Mundorf. It noted that Mundorf's insurance policy lapsed because she failed to pay her renewal premium, and that 18 *Del.C.* § 3905, if applicable, would relieve State Farm of its duty to mail Mundorf a notice of cancellation for her failure to pay her renewal premium. The court found, however, that the termination of assigned risk policies was governed by the Plan rather than Section 3905. *Suzanne Mundorf v. State Farm Insurance Co.*, Del.Super., C.A. No. 93C–05–006, slip op. at 2, Graves, J., 1994 WL 713874 (Dec. 12, 1994). Relying upon another Superior Court decision,[3] the court ruled that Section 11(a)(7)(A) of the Plan required the insurer of an assigned risk policy to send its insured a notice of cancellation separate from its renewal or billing notice. *Id.* at 4. Because State Farm failed to send Mundorf such notice, the court held that the initial policy with Mundorf remained in effect as of the date of the accident. *Id.* This is State Farm's appeal from that ruling.

## II

■ As a general rule, the means or method of effecting the renewal or cancellation of an insurance policy is determined by the provisions of a particular policy so long as the policy terms are consistent with both the statutory law and the public policy of the State. *See* 13A John A. Appleman & Jean Appleman, *Insurance Law & Practice*, § 7642 (1994 Supp.) (hereinafter "*Appleman*"). In this case, the policy provided that, unless notice of cancellation was mailed to Mundorf 59 days prior to the policy's termination, State Farm would automatically renew the initial policy for the next policy period (one year) upon Mundorf's "payment of the renewal premium *when due.*"[4] Mundorf claims that she did not receive any

notification from State Farm that a renewal premium was due. Thus, she contends that her initial policy remained in full effect because she was not obligated to tender a renewal premium since she was never notified one was due. To the contrary, State Farm contends that Mundorf received notice in May or June of 1992 that a renewal premium was due in November when the original policy expired.

■ On this record, there appears to be a factual dispute as to whether the notice received by Mundorf in May or June of 1992 recited that a renewal premium was due and the date that such premium was due. Ordinarily, factual disputes are not resolvable through summary judgment. *See Moore v. Sizemore*, Del.Supr., 405 A.2d 679, 680–81 (1979). Nonetheless, because the express terms of the Plan dictate that notice be given whenever an assigned risk policy is terminated for the insured's failure to pay a premium, we find any dispute as to the premium notice immaterial as a matter of law. The terms of the Plan are incorporated into all assigned risk insurance policies by operation of law, and State Farm was thus required to comply with the Plan notwithstanding either party's contractual obligations under the policy.

■ In general, a policyholder is charged with knowledge of the expiration date recited in his or her insurance policy when that date is clearly stated. *See Peterson v. Cornhusker Cas. Co.*, Neb.Supr., 238 Neb. 173, 469 N.W.2d 553 (1991); *Citta v. Camden Fire Ins. Ass'n, Inc.*, N.J.Super., 152 N.J.Super. 76, 377 A.2d 779 (1977); *Shepard v. U.S. Fidelity & Guaranty Co.*, Kan.Supr., 210 Kan. 652, 504 P.2d 228 (1972). Unless there is a policy or statutory direction to the contrary, an insurer is not under a legal duty to give to the insured notice of the expiration of an insurance policy, and the insurer is not obligated to renew the policy automatically. 13A *Appleman, supra,*

---

3. *Sinex v. Wallis*, Del.Super., C.A. No. 82C–SE–71, Poppiti, J. (Sept. 7, 1984).

4. The policy reads in pertinent part:
   **5. Renewal.**
   Unless, within 59 days of the policy effective in mail or deliver a notice of cancellation to *you:*

   a. we agree to continue it in force until the end of the current policy period; and
   b. unless we mail or deliver to *you* written notice of cancellation or a notice of our intention not to renew the policy, we agree to *renew* the policy for the next policy period upon *your* payment of the renewal premium when due.

§ 7642 at 410 (1976); *Peterson,* 469 N.W.2d at 555; *First Nat. Bank in Sioux City v. Watts,* Iowa Supr., 462 N.W.2d 922, 927 (1990); *Citta,* 377 A.2d at 780; *Waynesville Sec. Bank v. Stuyvesant Ins. Co.,* Mo.Ct. App., 499 S.W.2d 218, 220 (1973); *Kapahua v. Hawaiian Ins. & Guaranty Co.,* Haw. Supr., 50 Haw. 644, 447 P.2d 669 (1968). Absent a statutory grace period, the insured's failure to pay a renewal premium by the due date ordinarily results in a lapse of coverage as of the last day of the policy period. *See Thomason v. Schnorr,* Colo.Ct. App., 41 Colo.App. 546, 587 P.2d 1205 (1978).

Insurance companies doing business in Delaware, however, are statutorily obligated to give their policyholders notice that their coverage will be terminated in certain circumstances. The primary notice requirements are prescribed in 18 *Del.C.* § 3905.[5] That section sets forth separate notice criteria for "cancellations" and "nonrenewals."[6] Section 3905(a) establishes the notice requirements for "cancellations." Under that provision, when an insurer seeks to cancel an existing policy, it must give the insured at least thirty days notice of the cancellation and the reason therefor, unless the reason for cancellation is the insured's failure to pay a premium, in which case the insurer need only give the insured a minimum of ten days notice of cancellation.

Section 3905(b), by contrast, sets forth the notice requirements for "nonrenewals." Under that provision, an insurer must give the insured at least thirty days advance notice of its intention not to renew the policy accompanied by the reason or reasons for the nonrenewal. It specifically excepts, however, those cases in which a policy is not renewed because of the insured's failure to pay the renewal premium, or when the insurer has otherwise manifested its intention to renew. In such cases, no notice to the insured is required. *See Moore v. Travelers Indem. Ins. Co.,* Del.Super., 408 A.2d 298, 300 (1979).

In any event, the insured is given a thirty day "grace period" in which he or she may renew an expired policy. Pursuant to 18 *Del.C.* § 3903(c), when an insurer fails to renew a policy "based solely upon the reason for nonpayment of premium," the insurer shall renew the policy if the insured tenders the full amount due within thirty days after the end of the policy period. However, "the effective date of such renewed policy shall be the date of actual receipt by the insurer or its agent of the full premium payment due." § 3903(c).

■ As the Superior Court noted, Mundorf's policy with State Farm lapsed according to its terms on November 11, 1992. Because Mundorf failed to renew the policy

---

5. 18 *Del.C.* § 3905 provides in pertinent part:
   **§ 3905. Same—Notice of Cancellation or intention not to renew; notice of reasons.**
   (a) No cancellation of a policy to which § 3904(a) of this title applies shall be effective unless notice thereof is mailed or delivered by the insurer to the named insured at least 30 days prior to the effective date of cancellation and accompanied by the reason for cancellation, except that, where cancellation is for nonpayment of premium, at least 10 days notice of cancellation accompanied by the reason therefor shall be given.
   (b) No insurer shall fail to renew a policy except to which § 3903(b) of this title applies, unless it shall mail or deliver to the named insured, at his address last of record with the insurer, at least 30 days advance notice of its intention to nonrenew accompanied by the reason or reasons therefor. This subsection shall not apply in case of nonpayment of premium or if the insurer has manifested its willingness to renew....

6. It appears that the General Assembly did not intend the terms "cancellation" and "nonrenew-

al" to be synonymous as applied in this context. The term "renewal" is defined as:

> "Renewal" or "to renew" means the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term.

18 *Del.C.* § 3903(a)(2). Although not statutorily defined, "cancellation" is generally regarded as "an affirmative action taken by an insurer to terminate an existing policy whereas a failure to renew concerns a policy that has ceased to exist." *Moore v. Travelers Indem. Ins. Co.,* Del.Super., 408 A.2d 298, 300 (1979) (quoting Couch, *Insurance Law 2d* § 68.6); *see also Waynesville Sec. Bank v. Stuyvesant Ins. Co.,* Mo.Ct.App., 499 S.W.2d 218, 220 (1973) (holding that "cancellation" refers to the termination of an insurance policy prior to its expiration, and "nonrenewal" refers to the lapse of a policy according to its terms).

within thirty days of the end of the policy period, State Farm argues that the policy was deemed "non-renewed" for nonpayment of premium, and thus it was not obligated to send any statutory notice of nonrenewal. 18 *Del.C.* § 3905(b). We disagree.

Although an insurer which fails to renew for nonpayment of premium is not required to give notice to its insured under Section 3905(b), Mundorf held an assigned risk policy which is subject to special treatment under Delaware law. Specifically, assigned risk policies are excluded from the general definition of "policy" contained in 18 *Del.C.* § 3903(a)(1)e.1. Sections 3903–3907 of Title 18 are thus not applicable to automobile insurance policies issued under the Plan. *See Thomas v. Veltre,* Del.Super., 381 A.2d 245, 248 (1977). With respect to notice, therefore, the statutory distinction between cancellation and nonrenewal in non-assigned risk insurance coverage is not controlling here. *Cf. also Honeycutt v. Kendall,* D.Del., 549 F.Supp. 802 (1982).

The General Assembly has delegated its authority over assigned risk automobile insurance to the Insurance Commissioner. Pursuant to 18 *Del.C.* § 2527, the Insurance Commissioner has been authorized to promulgate regulations "as are necessary to effect and maintain an assigned risk plan." Regulation 17 of the Insurance Department adopts the Plan as a means to regulate assigned risk automobile insurance policies. *See Delaware Automobile Insurance Plan,* Ins.Reg. 17 (Bulletin No. 80–4). As adopted, the Plan has the force of statute, and compliance therewith is legally required. The Plan was designed to distribute equitably among all Delaware insurers the issuance of automobile liability policies for those individuals who are entitled to insurance coverage but are unable to procure it through ordinary methods.

The Plan is a comprehensive regulation governing the rights and liabilities of the parties to an assigned risk insurance contract. It deals with all aspects of such policies, including termination. *Thomas,* 381 A.2d at 248. The requirements to terminate and reinstate assigned risk insurance policies are set forth in Section 11(a)(7) of the Plan:

**(7) Cancellation Notice, Contested Premiums, Reinstatement or Reissuance of Cancelled Policies**

(A) Cancellation Notice and Billing

*No cancellation of a policy to which this Section applies,* other than as provided for in paragraph (B) of this subsection [where the amount of premium is contested], *shall be effective unless notice of cancellation for non-payment is mailed to the named insured.* If the premium is not received by the company by the due date specified, the policy may be cancelled by mailing by regular mail to the address last on record with the company with a copy to the producer of record, a notice of cancellation to be effective no sooner than the tenth day following the day following the date of notice.

\* \* \* \* \* \*

(C) Reinstatement/Reissuance of Policies Cancelled or Non–Renewed for Non–Payment

A policy which has been cancelled or non-renewed for non-payment of premium shall be reinstated or reissued by the company if, within thirty (30) days of the end of the policy period (which is 30 days following the original premium due date, whether renewal or installment; not the date listed on the cancellation notice), the amount due the company as of the date of cancellation, including any earned premium, is paid by the insured.

*Delaware Automobile Insurance Plan,* Ins. Reg. 17, § 11(a)(7) (emphasis added).

State Farm argues that its failure to comply with this section is excused because the policy "lapsed" due to Mundorf's failure to renew in contrast to being "cancelled" by State Farm. In essence, State Farm urges this Court to read into the language of the Plan the same distinction between nonrenewals and cancellations explicitly drawn by Section 3905 regarding non-assigned risk policies. In the absence of an express direction to that effect, however, we are bound by the plain and unambiguous terms of the Plan.

In construing a statutory or regulatory provision, it is fundamental that the Court ascertain and give effect to the intent of the

legislative or administrative body as clearly expressed in the language of the statute or regulation. *In re Adoption of Swanson,* Del. Supr., 623 A.2d 1095, 1096–97 (1993); *Giuricich v. Emtrol Corp.,* Del.Supr., 449 A.2d 232, 238 (1982). In seeking to ascertain this intent, the courts of Delaware employ the plain meaning rule. *Alfieri v. Martelli,* Del.Supr., 647 A.2d 52, 54 (1994). In other words, a court is required to give words of a statute or regulation their ordinary meaning. *Arbern– Wilmington, Inc. v. Director of Revenue,* Del.Supr., 596 A.2d 1385, 1388 (1991). In particular, "the courts may not engraft upon a statute [or regulation] language which has been clearly excluded therefrom by the Legislature [or administrative body]." *Alfieri,* 647 A.2d at 54 (quoting *Giuricich,* 449 A.2d at 238).

█ Applying these fundamental rules of construction, we conclude that the Plan clearly and unambiguously mandates that an insurer send its insured notice of cancellation when the insured fails to renew by nonpayment of premium. Whereas Section 3905(b) specifically excepts the insurer from its duty to give notice to the insured when the insured fails to renew for nonpayment of premium, the Plan makes no such exception. In fact, the Plan makes no distinction between "cancellations" and "nonrenewals." The decision to omit a provision is deemed to be purposeful. *Humm v. Aetna Cas. & Sur. Co.,* Del.Supr., 656 A.2d 712, 715 (1995). If the Insurance Commissioner intended such a distinction with respect to assigned risk policies, she could have easily so provided. The distinction may not be drawn judicially, however, in the absence of such a clearly expressed intention by the Insurance Commissioner. *See Nationwide Mut. Ins. Co. v. Krongold,* Del.Supr., 318 A.2d 606, 608 (1974). The Plan states that any attempt by an insurer to terminate an assigned risk policy for nonpayment of a premium will be ineffective "unless notice of cancellation for nonpayment is mailed to the named insured." We are constrained by the plain and unambiguous language of the Plan. It is not the function of a court to read into, or carve out, exceptions to a clearly-worded legislative or regulatory enactment. *See State v. Holland,* Del.Super., 55 Del. 565, 189 A.2d 79, *aff'd,* 56

Del. 551, 194 A.2d 698 (1963). We decline to do so here.

Any doubt as to the intent of Section 11(a)(7) is resolved by its history. In 1980, Section 11(a)(7) was amended to require an insurer to send its insured notice of cancellation separate from the billing or renewal notice. As recast, the 1980 amendment contrasts sharply with its predecessor which provided:

> The carrier shall incorporate in all billings to the insured, a notice of cancellation stating that this serves as the required notice of cancellation and if the premium is not paid by the specified date, cancellation is immediately effective.

*Revised Delaware Automobile Insurance Plan,* Ins.Reg. 17, § 11(a)(7) (superseded).

According to the Insurance Commissioner who drafted the regulation, Section 11(a)(7), as amended, required a separate notice of cancellation be mailed to the insured to be effective no sooner than ten days following the cancellation, and this notice is to follow the renewal or billing notice to the insured. *See Delaware Insurance Law & Related Statutes* (Bulletin No. 80–4) at 2925 (Oct. 20, 1980) ("The prior provision permitting a combination billing and cancellation notice has been rescinded").

█ Although the interpretation of a regulation is ultimately a question of law for a court to decide, substantial weight and deference is accorded to the construction of a regulation enacted by an agency which is also charged with its enforcement. *Krongold,* 318 A.2d at 609; *Division of Social Services of Dept. of Health and Social Services v. Burns,* Del.Supr., 438 A.2d 1227 (1981). This deference is reflected in the standard of judicial review that an administrative agency's interpretation of its rules and regulations will not be reversed unless clearly erroneous. *Krongold,* 318 A.2d at 609; *Vassallo v. Haber Electric Co.,* Del.Super., 435 A.2d 1046 (1981). In this case, we must defer to the Insurance Commissioner's sentient interpretation of the Plan, which was to require insurers to give specific notice to their assigned risk policyholders that their coverage will be terminated within ten days of their

receipt of such notice. *See also Aetna Casualty & Surety Co. v. O'Connor,* N.Y.Ct.App., 8 N.Y.2d 359, 207 N.Y.S.2d 679, 681, 170 N.E.2d 681, 683 (1960) ("Manifestly, nothing would be gained by compelling insurance carriers to issue insurance to individuals otherwise unable to obtain a policy if the conditions under which the insurance could be cancelled or avoided were not also the subject of regulation."). Under Section 11(a)(7) as currently promulgated, therefore, State Farm was required to send Mundorf a notice of cancellation separate from its renewal or billing notice to effect a termination of Mundorf's insurance coverage.

We also note that State Farm failed to report the termination of Mundorf's insurance coverage to the Delaware Department of Motor Vehicles ("Department") within thirty days of such termination as required by Section 18(f) of the Plan. Under that provision, an insurer is obligated to report to the Department whenever an assigned risk policy is cancelled or terminated within the first two years of its issuance.[7] This requirement is repeated in Insurance Regulation 31. Under that provision, an insurer must give notice to the Department when an assigned risk policy is terminated "for any reason" within two years of its issuance, and the Department is directed to then forward the notice to the terminated policyholder.

Notice requirements regarding the termination of assigned risk policies are designed to protect the public from the dangers posed by uninsured motorists. *See DeBose v. Travelers Ins. Companies,* Ohio Supr., 6 Ohio St.3d 65, 451 N.E.2d 753, 755–56 (1983). Consonant with that policy, the Insurance Commissioner's Regulations mandate that assigned risk policyholders whose policies have been in effect less than two years receive notice of any termination of their policies in time to secure new coverage. In addition to protection of the public from high risk drivers, the notice requirement serves to warn or remind the insured to protect himself or herself with continuous insurance coverage. *See, e.g., Taylor v. MFA Mut. Ins. Co.,* La.Supr., 334 So.2d 402, 404 (1976).

State Farm's argument that this dispute be resolved through application of principles of contract law is not persuasive. Automobile insurance is no longer considered merely a private contract between two parties but is a matter of public concern. *See Goetz v. Country Mut. Ins. Co.,* Ill.Ct.App., 28 Ill. App.3d 154, 328 N.E.2d 109, 113 (1975); *Teeter v. Allstate Ins. Co.,* N.Y.Supr., 9 A.D.2d 176, 192 N.Y.S.2d 610, 616 (1959), *aff'd,* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961) ("Once a certificate of insurance [ ] has been issued by the insurance company and filed with the Commissioner, the contract of insurance ceases to be a private contract between the parties. A supervening public interest attaches and restricts the rights of the parties in accordance with the statutory provisions."). Indeed, the public concern frequently overrides either the express terms of an insurance policy or even general principles of contract law. For example, if an insurer fails to offer additional uninsured motorist coverage pursuant to 18 *Del.C.* § 3902, the insurer is deemed to have made a continuing offer of such coverage, and the offer remains open to the insured even after an accident occurs. *See State Farm Mut. Auto. Ins. Co. v. Arms,* Del. Supr., 477 A.2d 1060 (1984).

Here, the public concern is reflected in the Plan itself. The Plan requires notice so that the policyholder remains insured (by either continuing coverage with that particular carrier or procuring insurance elsewhere) and the public is protected from an uninsured high-risk motorist. To effect termination of insurance coverage, therefore, an insurer must give notice of cancellation as required by the Plan. Absent such compliance, an assigned risk insurance policy continues in full effect. *See* 13A *Appelman, supra,* § 7642; *Capra v. Lumbermen's Mut. Cas. Co.,* N.Y.Ct.App., 31 N.Y.2d 760, 338 N.Y.S.2d 437, 290 N.E.2d 438 (1972), *appeal after remand,* 43 A.D.2d 986, 352 N.Y.S.2d 58

---

7. Section 18(f) provides in pertinent part:
   **Sec. 18. Cancellations**
   (f) Within 30 days of cancellation or termination ..., the company will report such cancellation or termination of an assigned risk policy within its first two years of issuance by the company to the Division of Motor Vehicles on a prescribed form.

(1974) (holding that insurer's failure to comply with relevant provisions of assigned risk plan governing the termination of insurance continues policy coverage in full force); *Goetz*, 328 N.E.2d at 113 (holding that notice rule of state automobile assigned risk plan had force of statute and required insurers to give notice to assigned risk policyholders prior to expiration of policies to afford them reasonable opportunity to maintain continuous coverage, and insurer's failure to give such notice required by rule resulted in continuous coverage even though insured failed to pay renewal premium); *see also Government Employees Ins. Co. v. Concord General Mut. Ins. Co.*, Mne.Supr., 458 A.2d 1205, 1209 (1983); *Oregon Auto. Ins. Co. v. Thorbeck*, Ore.Supr., 283 Or. 271, 583 P.2d 543, 545 (1978); *Lang v. Kurtz*, Wisc.Ct.App., 100 Wis.2d 40, 301 N.W.2d 262, 264 (1980). Therefore, notwithstanding the fact that Mundorf's policy bore the expiration date, November 11, 1992, and the accident occurred on December 24, 1992, State Farm is liable under the policy because it failed to comply with Section 11(a)(7) of the Plan by not providing notice of cancellation to Mundorf.

### III

The Plan prescribes the exclusive method to terminate an assigned risk insurance policy. An insurer is precluded from asserting that an assigned risk policy has been terminated unless the method of cancellation is consistent with the Plan. Because State Farm failed to comply with Section 11(a)(7) of the Plan, Mundorf's policy remained in effect on the date of the accident. The judgment of the Superior Court is AFFIRMED.