# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

1205 COASTAL, LLC, a Delaware   )
limited liability company,   )
  )
Plaintiff,   )
  )
  )    C.A. No. S22C-07-002 CAK
v.   )
  )
  )
COVE OWNERS ASSOCIATION,   )
INC., a Delaware corporation,   )
  )
Defendant.   )

Submitted: January 10, 2024
Decided: January 29, 2024

*Upon Cross-Motions for Summary Judgment*

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT GRANTED**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DENIED**

## <u>MEMORANDUM OPINION AND ORDER</u>

Richard E. Berl, Jr., Esquire, Hudson Jones Jaywork & Fisher, LLC, 34382 Carpenter's Way, Suite 3, Lewes, DE 19958, Attorney for Plaintiff.

Aaron E. Moore, Esquire and M. Claire McCudden, Esquire, Marshall Dennehey, P.C., 1007 North Orange Street, Suite 600, P.O. Box 8888, Wilmington, DE 19899-8888, Attorneys for Defendant.

**KARSNITZ, R. J.**

## I.   FACTS AND COURT OF COMMON PLEAS LITIGATION

Plaintiff 1205 Coastal, LLC, a Delaware limited liability company ("Plaintiff" or "1205 Coastal") is the former owner of Unit 300 (the "Property") in the Cove Condominium in Dewey Beach, Delaware (the "Cove"). Defendant Cove Owners' Association, Inc., a Delaware corporation ("Defendant" or "Cove Owners") is the condominium association for the Cove. On January 25, 2019, Cove Owners filed a complaint against 1205 Coastal in the Court of Common Pleas seeking unpaid assessments arising from 2017 capital improvements and 1205 Coastal's share of flood insurance premiums.[1] Trial was held on December 3, 2021. On February 24, 2022, the Court of Common Pleas decided in favor of Cove Owners and awarded past due assessments plus interest.[2] In its Opinion, the Court stated as follows:

> [Cove Owners] has established by a preponderance of the evidence that [1205 Coastal] owes [Cove Owners] $32,016.00 as its unpaid proportionate share of the capital improvement, plus late fees of $950.00, and interest thereon from the original date of assessment.[3]
>
> ***
>
> The Court finds from the evidence that [1205 Coastal] has failed to pay [Cove Owners] $23,452.92 in flood insurance premiums and late fees accrued thereon.[4]

---

[1] *Cove Owners Association, Inc. v. 1205 Coastal, LLC*, No. CPU6-19-000104.
[2] *See* Decision After Trial dated February 24, 2022 at p. 2.
[3] *Id.* at p. 5.
[4] *Id.* at p. 7

***

[Cove Owners] is entitled to reasonable attorneys' fees
incurred in the obtainment and collection of this judgment.[5]

***

Judgment is entered in favor of [Cove Owners] and against
[1205 Coastal] in the amount of $56,418.92, plus pre-
judgment and post-judgment interest at the legal rate from
October 1, 2018, plus reasonable attorneys' fees to be
determined by the Court. [Cove Owners] shall submit an
affidavit of reasonable attorneys' fees within twenty-one
(21) days of this Order; [1205 Coastal] shall have fourteen
(14) days to file any response to the affidavit.[6]

1205 Coastal had asserted a counterclaim against Cove Owners. Regarding
this counterclaim, the Court concluded as follows:

Inasmuch as [Cove Owners] has clearly established its claims
regarding the loan and flood insurance assessments, and
[1205 Coastal] has offered no evidence of any other alleged
over-charged assessments, the Court finds against [1205
Coastal] on its Counterclaim.[7]

On March 17, 2022, counsel for Cove Owners filed an Affidavit of Attorneys'
Fees which stated in part as follows:

During the three (3) years in bringing this matter to trial to
collect on the overdue assessments and insurance premiums
owed  by [1205 Coastal], [Cove Owners] incurred $495.85
in costs, expenses and filing fees, $25,019.50 in attorneys'
fees and an additional $3,940.00 in professional staff fees,

---

[5] *Id.* at p. 8.
[6] *Id.*
[7] *Id.*

totaling $29,455.35, as of March 17, 2022.[8] The principal amount claimed to be due by Cove Owners, including the award of the Court and attorneys' fees and costs as of that date, was $85,874.27. That amount, however, did not include interest awarded by the court and as accrued after trial.

1205 Coastal sought to sell the Property to Skarda Dewey, LLC ("Skarda"), so it requested a payoff letter from Cove Owners. On May 9, 2022, counsel for Cove Owners sent counsel for 1205 Coastal a letter reflecting an updated payoff amount for the Property, including amounts awarded by the Court of Common Pleas, interest accrued to date, and attorneys' fees and costs to date. The amount of attorneys' fees and costs as reflected in the letter was $30,743.59. The total amount owed reflected in the letter was $103,024.56.[9]

On May 16, 2022, 1205 Coastal sold the Property to Skarda. On that date, 1205 Coastal sent Cove Owners a check in the amount of $72,280.97. The check stub included the comment: "Assessment Lien Payoff." Three days later, counsel for Cove Owners returned the check to counsel for 1205 Coastal, because "it [did] not represent the full payoff amount sent to [counsel for 1205 Coastal]."[10]

On May 23, 2022, counsel for 1205 Coastal sent counsel for Cove Owners a

---

[8] *See* Affidavit of Attorneys' Fees filed by Robert J. Valihura, Jr., Esquire, at ¶5.
[9] *See* letter from Robert J. Valihura, Esquire dated May 9, 2022.
[10] *See* letter from Robert J. Valihura, Esquire, dated May 19, 2022.

letter claiming that 1205 Coastal was only required to pay amounts owed to Cove Owners that were expressly set forth in liens recorded with the Recorder of Deeds by Cove Owners.[11] Counsel for 1205 sought to exclude amounts owed pursuant to Cove Owner's statutory lien, including amounts awarded by the Court of Common Pleas.[12]

The Settlement Statement for the Sale, at line 508, reflects the escrow of funds for "Attorneys' Fees for Association" in the amount of $38,429.49.

Although it claimed a statutory lien for all amounts owed, on June 1, 2022, as "belt and suspenders," Cove Owners recorded a "Notice of Statement of Lien for Unpaid Maintenance Fees and Assessments" against the Property in the amount of $103,269.56 with the Recorder of Deeds, reflecting amounts claimed by Cove Owners to be owed by 1205 Coastal as of May 24, 2022.

On June 8, 2022, counsel for Cove Owners sent counsel for 1205 Coastal a letter demanding the amount set forth in his letter of May 9, 2022, plus $490.00 for recording and satisfying the lien against Unit 300, totaling $103,514.56.[13] On June 14, 2022, counsel for 1205 Coastal sent Cove Owners a check in that exact amount. On June 15, 2022, counsel for Cove Owners released the two recorded liens against

---

[11] *See* letter from Richard Berl, Esquire, dated May 23, 2022.
[12] Pursuant to 25 *Del. C*. § 81-316(a).
[13]*See* letter from Robert J. Valihura, Esquire, dated June 8, 2022.

5

the Property.

Although the Court of Common Pleas determined that Cove Owners was entitled to recover its reasonable attorneys' fees when it issued its decision on February 24, 2022, it did not determine the amount owed until October 4, 2022, when it determined that Cove Owners was entitled to $24,486.10 in attorneys' fees and costs,[22] which was $6,257.49 less than claimed by Cove Owners. Accordingly, on August 29, 2023, Cove Owners refunded the $6,257.49 overpayment to 1205 Coastal.

1205 Coastal did not appeal the decision of the Court of Common Pleas.

## II. PROCEDURAL HISTORY OF THIS CASE

Plaintiff filed a Complaint against Defendant in this Court on July 5, 2022. The Complaint seeks four (4) types of relief.

The first is for Declaratory Judgment. Plaintiff argues that it was entitled to the satisfaction of the first and only recorded lien at the time it sold the Property to Skarda. This argument does not take into account the statutory lien or interest subsequently accrued thereon and legal fees. Under that argument, the  amount forwarded  to Defendant's attorney was more than sufficient from the sworn statements in the lien itself to constitute complete and full satisfaction. Indeed, to the extent the payment exceeded the amount of the lien, Defendant was obligated to

refund the difference to Plaintiff. Therefore, Plaintiff seeks a declaration from the Court that that Defendant should have accepted and deposited the $72,280.97 check and thereafter should have issued a refund to Plaintiff in the amount of $34,660.57, the difference between the check amount and the $37,620.40 recorded lien.

The second is for damages for Defendant's failure to mark its lien against the Property "satisfied" upon Defendant's receipt of the $72,280.97 check, which was rejected by Defendant. Plaintiff claims that it is entitled to damages under 10 *Del. C.* §4754 as measured by the additional sums paid by Plaintiff over and above that necessary to satisfy the lien, plus statutory penalties, and its attorneys' fees. Again, this argument does not take into account the statutory lien.

The third is an equitable claim for unjust enrichment against Defendant. Plaintiff claims that Defendant received payments over and above what was necessary to satisfy the recorded lien and was thereby unjustly enriched without justification. Again, this argument does not take into account the statutory lien.

The fourth is a claim sounding in bad faith. Plaintiff argues that Defendant's demands, separately and through its attorneys, for additional sums beyond what was necessary to satisfy the [recorded lien], constitute demands made in bad faith and without any factual or legal basis. Again, this argument does not take into account the statutory lien.

This case was stayed on September 2, 2022, pending the outcome of the related case in the Court of Common Pleas, discussed above. That matter concluded on October 4, 2022, when the Court of Common Pleas awarded legal fees and costs to Cove Owners for successfully prosecuting that action. Defendant filed its Answer to the Complaint in this action on November 22, 2022. Discovery concluded on July 31, 2023. Plaintiff and Defendant each filed a Motion for Summary Judgment with Opening Briefs on August 31, 2023. On September 29, 2023, Plaintiff and Defendant each filed an Answering Brief in opposition to the other's Motion. On October 6, 2023, Defendant filed its Reply Brief in Support of its Motion. On October 30, 2023, Plaintiff filed its Reply Brief in Support of its Motion. On January 4, 2024, I held oral argument on the Motions for Summary Judgment. At oral argument I asked counsel to address the issue of the applicability of the Delaware Uniform Common Interest Ownership Act ("DUCIOA")[14] under 25 *Del. C.* § 81-122. Plaintiff and Defendant responded by letter on January 9 and 10, respectively.[15] This is my ruling on the Motions for Summary Judgment.

---

[14] 25 *Del. C.* § 81-101 *et seq.*, specifically § 81-316.
[15] Counsel for both parties agreed that DUCIOA is applicable to this case, so I do not address that issue herein.

### III. <u>LEGAL STANDARD AND BURDEN OF PROOF</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[16] A genuine issue of material fact exists when "the parties are in disagreement concerning the factual predicate for the legal principles they advance."[17] The moving party bears the burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[18]

Once the non-moving party has been afforded the opportunity to show a genuine issue of material fact in dispute, the burden returns to the moving party to demonstrate the absence of such disputes.[19] Disputes regarding immaterial issues of fact will not preclude summary judgment.[20] If the disputed facts could have no bearing on the analysis or resolution of the parties' claims, then any such disputed facts are immaterial.[21] The party opposing summary judgment is "both entitled, and

---

[16] Super. Ct. Civ. R. 56(c).

[17] *Merrill v. Crothall-Am., Inc.,* 606 A.2d 96, 99 (Del.1992).

[18] *Sterling v. Beneficial Nat'l Bank, N.A.,* Del. Super., C.A. No. 91C-12-005, Ridgely, P.J. (Apr. 13, 1994) (Mem. Op.).

[19] Super. Ct. Civ. R. 56(e); *Mann v. Oppenheimer & Co.,* 517 A.2d 1056, 1060 (Del. 1986).

[20] *Brzoska v. Olson,* 668 A.2d 1355, 1365 (Del. 1995) *citing State Farm Mut. Auto. Co. v. Mundorf,* 659 A.2d 215, 217 (Del.1995).

[21] *See e.g., Mundorf,* 659 A.2d at 217.

expected, to come forward with admissible evidence showing the existence of a genuine issue of material fact."[22] The Court must view the record in a light most favorable to the non-moving party.[23] However, the opposing party may not merely assert the existence of a disputed issue of fact; the opponent of a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts."[24] Ultimately, a motion for summary judgment "must be decided on the record presented, and not on evidence potentially possible."[25]

The fact that there are Cross-Motions for Summary Judgment in this case does not alter the standard of review nor do the Cross-Motions act as a *per se* concession that there is an absence of factual disputes.[26] The mere filing of Cross-Motions for Summary Judgment does not serve as a waiver of a movant's right to assert the existence of a factual dispute as to the other party's motion.[27]

In my view, and for the reasons discussed below, the record reflects that Defendant has borne its burden of demonstrating that there are no material issues of

---

[22] *Mann,* 517 A.2d at 1060.
[23] *Hammond v. Colt Ind. Op. Corp.,* 565 A.2d 558, 560 (Del.Super.1989).
[24] *Brzoska,* 668 A.2d at 1364 *quoting Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).
[25] *Rochester v. Katalan,* 320 A.2d 704, 708 n. 7 (Del.1974).
[26] *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. Ct. 2001).
[27] *Riad v. Brandywine Valley SPCA*, 2023 WL 4140774 (Del. Super. June 22, 2023).

fact in dispute, and that it is entitled to judgment as a matter of law, with respect to the two claims for Damages for Failure to Release Liens and Bad Faith. Plaintiff has not demonstrated that there are genuine issues of material fact in dispute with respect to these two claims. The other two claims, for Declaratory Judgment and Unjust Enrichment, are dismissed for the reasons discussed below.

## IV.   ANALYSIS

This case, at its core, pits the traditional practice of filing liens on real property with the Recorder of Deeds against the more modern practice of creating liens on certain types of real property (condominiums) by statute. Plaintiff seems to suggest that, where recorded, liens on real property create *in rem* liability, whereas, where statutory, liens on real property only create *in personam* liability. Thus, a recorded lien could be satisfied by an action against the real property, whereas a statutory lien would require a lawsuit against the obligor. As discussed more fully below, I find that the statutory liens which apply to the Property in this case create both *in rem* and *in personam* liability, and govern the outcome of the case.

### A. Declaratory Judgment

Under Delaware's Declaratory Judgment Act, parties to a contract can seek declaratory judgment to determine "any question of construction or validity" and can

11

seek a declaration of "rights, status or other legal relations thereunder."[28] The Declaratory Judgment Act enables the courts to advance the stage at which a matter traditionally would have been justiciable, allowing for the construction of a contract before or after a breach has occurred.[29] Declaratory relief is in the discretion of the Court and not available as a matter of right.[30]

Although declaratory judgment can be sought before or after a breach, it "is intended to provide a remedy where no other remedy is available under circumstances where an impending injury has not as yet occurred."[31] "The principal purpose of the statute is to provide preventive justice … If, therefore, another adequate remedy is immediately available, no purpose is served by the use of the declaratory judgment procedure and the other remedy should be followed."[32]

Here, Plaintiff cannot seek declaratory relief because another adequate remedy – monetary relief -- is available. Indeed, Plaintiff's cause of action for Damages for Failure to Release Liens is such a claim. If declaratory relief is unavailable, I cannot render an advisory opinion on the issues raised by Plaintiff

---

[28] 10 *Del. C.* § 6502.
[29] *Rollins Int'l, Inc. v. Int'l Hydronics Corp.,* 303 A.2d 660, 662 (Del.1973); 10 *Del. C.* § 6503.
[30] 10 *Del. C.* § 6506.
[31] *Hampson v. State ex rel. Buckson,* 233 A.2d 155, 156 (Del. 1967).
[32] *Id.*

under the Declaratory Judgment claim.

Accordingly, I dismiss Plaintiff's Declaratory Judgment claim.

## B. Damages for Failure to Release Lien

Plaintiff argues that Defendant should be held liable for damages for failing to satisfy the recorded lien. Delaware law provides:

> (a) Every person to whom a sum is due by judgment, who receives satisfaction of the same, shall forthwith cause such satisfaction to be entered upon the record of the judgment.
>
> (b) Whoever being the holder of a judgment wilfully fails to satisfy a judgment upon the record as required by subsection (a) of this section, shall be fined not more than $500 for each such failure.
>
> (c) The Superior Court shall have jurisdiction of offenses under this section.[33]

Plaintiff seeks damages as measured by the additional sums paid by Plaintiff over and above that necessary to satisfy the recorded lien, plus statutory penalties, and its attorneys' fees.[34]

DUCIOA provides in pertinent part:

> The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner. Unless the declaration otherwise

---

[33] 10 *Del. C.* § 4751.
[34] 10 *Del. C.* §4754.

provides, fees, charges, late charges, fines, and interest charged … and any other sums due the association under the declaration, this chapter or as a result of an administrative or judicial decision, together with court costs and reasonable attorneys' fees incurred in attempting collection of the same, are enforceable in the same manner as unpaid assessments under this section.**[35]**

***

Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required.[36]

The Delaware Unit Property Act provides in pertinent part:

Upon the voluntary sale or conveyance of a unit, the grantee shall be jointly and severally liable with the grantor for all unpaid assessments for common expenses which are a charge against the unit as of the date of the sale or conveyance, but such joint and several liability shall be without prejudice to the grantee's right to recover from the grantor the amount of any such unpaid assessments which the grantee may pay, and until any such assessments are paid, they shall continue to be a charge against the unit which may be enforced in the manner set forth in § 2234 of this title. Provided, however, that any person who shall have entered into a written agreement to purchase a unit shall be entitled to obtain a written statement from the treasurer setting forth the amount of unpaid assessments charged against the unit and its owners and, if such statement does not reveal the full

---

[35] 25 *Del. C.* § 81-316(a). See also, *Bank of Am., N.A. v. Yarborough*, 2020 WL 2511430, at \*3 (Del. Super. Ct. May 15, 2020) (DUCIOA Section 81-316(a) gives Common Interest Communities ("CIC") . . . a statutorily created lien for unpaid assessments or condominium fees.).
[36] 25 *Del. C*. § 81-316(d).

amount of the unpaid assessments as of the date it is rendered, neither the purchaser nor the unit shall be liable for the payment of an amount in excess of the unpaid assessments shown thereon. Any such excess which cannot be promptly collected from the former unit owner may be reassessed by the council as a common expense to be collected from all of the unit owners including the purchaser, the former unit owner's heirs, personal representatives, successors and assigns."[37]

The Act also states that "all sums properly assessed against a unit shall constitute a charge against that unit and that the unit owner is personally liable for any assessment due 'together with interest thereon not to exceed 18% per annum."[38]

The decision of the Court of Common Pleas expressly stated that Cove Owners was entitled to reasonable attorneys' fees, although those attorneys' fees were not awarded until a later date by the Court. Indeed, under the statute, the award of attorneys' fees to Defendant was mandatory: "A judgment or decree in any action brought under this section *must* include costs and reasonable attorneys' fees for the prevailing party."[39] Therefore, the $72, 280.97 check proffered by Plaintiff was properly rejected by Defendant, because, contrary to the note on the check stub, the payment did not constitute a full "Assessment Lien Payoff." Rather, the assessment

---

[37] 25 *Del. C.* § 2237.

[38] 25 Del. C. § 2233; see *One Virginia Ave. Condo. Ass'n of Owners v. Reed*, 2005 WL 1924195, at *14 (Del. Ch. Aug. 8, 2005), citing § 2233.

[39] 25 Del. § 81-316(g) (emphasis added); *see Bragdon v. Bayshore Prop. Owners Ass'n, Inc.*, 251 A.3d 661, 689 (Del. Ch. 2021).

lien payoff amount was $103,514.56, the amount set forth in Defendant's counsel's letter of May 9, 2022, which was provided to Plaintiff upon request in order to facilitate the sale of the Property. DUCIOA §316(a) does not require that a judgment from a court be obtained in order to create the statutory lien. The amount of the statutory lien as of May 9, 2022 was the amount set forth in the May 9, 2022 payoff letter, even though the Court of Common Pleas had not yet determined the amount of attorneys' fees. When the Court of Common Pleas determined the lower amount of attorneys' fees of $24,486.10 in October, 2023, it reduced Defendant's statutory lien for attorneys' fees by $6,257.49, which amount Defendant returned to Plaintiff.

Plaintiff argues that because Defendant did not *record* a lien for amounts accrued under the DUCIOA statute after the January 2019 lien was recorded, it was not required to pay those amounts when it closed on the sale of the Property. Plaintiff argues that the additional amounts owed under the statute only gave rise to an *in personam* claim against Plaintiff which it would have had to pursue in court (and might well have been uncollectible), and would only give rise to an *in rem* claim on the Property, payable upon closing on the sale of the Property, if a lien for the additional amounts were recorded. This ignores the clear and unambiguous language of DUCIOA that recordation of a lien is not required to constitute notice to third parties

16

(including Plaintiff) and perfection of the lien.[40]

Moreover, §§ 2233 and 2237 of the Unit Property Act provide that assessments constitute charges on the unit. This further indicates that they are *in rem.* Indeed, § 2233 expressly provides "all sums properly assessed against a unit shall constitute a charge against that unit and that the unit owner is personally liable for any assessment due." Thus, amounts owed by Plaintiff to Defendant with respect to the Property give rise to both *in rem* and *in personam* claims. Although § 2237 provides that Cove Owners debts "*may* be enforced in the manner set forth in § 2234" (providing for a civil action for enforcement), there is no *requirement* that a civil action be prosecuted in order for the debt to attach to the Property.

As discussed above, Defendant held both a recorded lien and a statutory lien for amounts owed by Plaintiff for past due assessments, interest, attorneys' fees, and costs. As of May 9, 2022, that amount was $103,514.56. Plaintiff's proffered May 16, 2022 payment of $72,280.97 was therefore insufficient to satisfy Defendant's lien. Defendant had no legal obligation to mark the lien as satisfied until it was fully satisfied. Once the full amount was received by Defendant, it released the recorded liens. In my view, Defendant has borne its burden of demonstrating that there are no material issues of fact on the record, and that it is entitled to judgment as a matter

---

[40] 25 *Del. C.* § 81-316(d).

of law. Plaintiff has not demonstrated that there are genuine issues of material facts in dispute on the record with respect to this claim.

Accordingly, I grant summary judgment on this claim for Damages for Failure to Release Liens to Defendant.

## C. Unjust Enrichment

Plaintiff posits an equitable claim of Unjust Enrichment against Defendant. However, our Supreme Court has stated that the Cove Declaration constitutes a contract between the parties,[41] and "Delaware courts have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract."[42]

Accordingly, I dismiss Plaintiff's Unjust Enrichment claim.

## D. Bad Faith

Plaintiff argues that Defendant's demand, separately and through its attorneys, for amounts over and above what was necessary to satisfy the recorded lien constituted a demand made in bad faith and without any factual or legal basis. In the Complaint, Plaintiff asks the Court to order Defendant to pay a sum representing punitive

---

[41]"A condominium declaration and its accompanying code of regulations together form no more than an ordinary contract between the unit owners (and, initially, the developer), created under the statutory framework of the Unit Properties Act." *Council of Dorset Condo. Apartments v. Gordon*, 801 A.2d 1, 5 (Del. 2002).

[42] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (internal citation omitted).

damages for its "fraudulent conduct and extortion of funds from the Plaintiff."

Since I am aware of no freestanding claim for bad faith that is cognizable by this Court on these facts, I am going to treat this as a claim for breach of the implied covenant of good faith and fair dealing, which our Chancery Court has described as follows:

> The implied covenant is inherent in all contracts and is used to infer contract terms to handle developments or contractual gaps that neither party anticipated. It applies when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected. The reasonable expectations of the contracting parties are assessed at the time of contracting. To prevail on an implied covenant claim, a plaintiff must prove a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.[43]

Plaintiff has not identified any "gaps" in its contract with Defendant, the Cove Declaration. The record does not indicate that Defendant breached an implied term of the Declaration. Nor does the record indicate that Plaintiff sustained any damages, as discussed above. Defendant received from Plaintiff exactly what it was owed, no more and no less, whereupon it released the liens on the Property. In my view,

---

[43] *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 478 (Del. Ch.) (internal citations omitted).

Defendant has borne its burden of demonstrating that there are no material issues of fact in dispute on the record with respect to the Bad Faith Claim, and that it is entitled to judgment as a matter of law. Plaintiff has not demonstrated that there are material issues of fact in dispute on the record with respect to this claim.

Accordingly, I grant summary judgment on the Bad Faith claim to Defendant.

### E. Attorneys' Fees and Costs

Each party asks that I award it attorneys' fees and costs against the other.

Specifically, Plaintiff requests such relief under two statutory provisions of DUCIOA. The first is 25 *Del. C*. §81-417(a), which provides that if a "person subject to this chapter fails to comply with any of its provisions or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award court costs and reasonable attorneys' fees." Defendant argues that the Court of Common Pleas had already ruled in its favor on the statutory lien in an amount well above the amount of the recorded lien, yet Plaintiff commenced this lawsuit in Superior Court solely on the basis of the recorded lien, in an attempt to avoid its obligations under the statutory lien, even though the decision of the Court of Common Pleas on attorneys' fees was still pending. Defendant claims that it is a person adversely affected by Plaintiff's failure under DUCIOA to comply with its

obligations under the Cove Declaration and that is was harmed by Plaintiff's prosecution of this lawsuit.

The second is 25 *Del. C.* § 81-316(a), which provides that, in its efforts under DUCIOA to collect the amounts due to it under the statutory lien, Defendant is entitled to, *inter alia,* "court costs and reasonable attorneys' fees incurred in attempting collection of the same." In defending this action, Defendant was compelled to further litigate – beyond the Court of Common Pleas -- the issue of whether it was entitled to past due assessments and charges. The statute does not provide that only a prevailing plaintiff can recover legal fees and costs. It provides for recovery by Defendant "as a result of an administrative or judicial decision."[44]

In Delaware the general rule is that each party bears its attorneys' fees and expenses of litigation unless there is a "contractual or statutory basis for liability."[45] A provision for personal liability for attorneys' fees contained in the Cove Declaration or DUCIOA is an enforceable contractual obligation against a record owner of a condominium unit.[46] I may order payment of reasonable attorneys' fees and costs so long as such payment is authorized by some provision of statute or

---

[44] 25 *Del. C.* § 81-316(a).

[45] *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 370 (Del. Super. 1982).

[46] *Id.*

contract.[47] Both the Cove Declaration and DUCIOA entitle Defendant to reasonable attorneys' fees and costs incurred in the obtaining and collection of this summary judgment.

Nonetheless, I am reluctant to award attorneys' fees unless there is a clear case for doing so. I have dismissed two of Plaintiff's four causes of action (Declaratory Judgment and Unjust Enrichment). I have granted Defendant Summary Judgment on the other two causes of action (Damages for Failure to Release Liens and Bad Faith) because there are no material facts of record to support them. Once the Court of Common Pleas awarded attorneys' fees and the procedures of DUCIOA were followed, all monies were allocated to the persons entitled thereto, and the liens on the Property were released. 1205 Coastal could have appealed the Court of Common Please decision but chose instead to file this case in Superior Court. Allowing for inartful drafting and without ascribing any ulterior motives to counsel for Plaintiff, this necessarily resulted in further delay and the expenditure of additional sums for legal fees and costs by Defendant after it had prevailed in the Court of Common Pleas. I do not think these fees and costs should be borne *pari pasu* by a pass-through to the remaining unit owners at the Cove in the form of increased dues or

---

[47] *Id.*

assessments, but rather by Plaintiff.

I therefore award attorneys' fees and costs to Defendant. Counsel for Defendant shall file for my review an Affidavit of Attorneys' Fees within twenty-one (21) days of this Order. Counsel for Plaintiff shall file any response to the Affidavit of Attorneys' Fees within fourteen (14) days thereafter.

## V.    CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff's Motion for Summary Judgment is **DENIED.**

I award Attorneys' Fees and Costs to Defendant.

**IT IS SO ORDERED**.

/s/ Craig A. Karsnitz

cc:    Prothonotary